No. 10.—THOMAS P. STUBBS, plaintiff in error, *vs.* SEABORN GOODALL, defendant.

[1.] The Act of 1826, "to define the liability of indorsers of promissory notes, and other instruments, and to place them on the same footing with securities," changes the law merchant so far, as to dispense with demand and notice, in order to bind indorsers, except on bankable paper; *Held* that an indorser *in blank*, on a promissory note, which is absolute, unconditional, and unrestricted on its face, cannot prove *by parol*, that it was given for the purpose of negotiation, or was intended to be negotiated at a chartered bank.

Assumpsit, in Chatham Superior Court, June Term, 1847, before Judge FLEMING.

For the facts, refer to the decision of the Court.

BARTOW & WILLIAMS, for plaintiff in error.

CHARLTON, WM. & WM. F. LAW, and MARSH, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

At the January Term, 1846, of the Superior Court of Chatham county, Thomas P. Stubbs instituted an action of Assumpsit against Seaborn Goodall, as indorser of a promissory note, made in the following terms :.

"Savannah, March 31st, 1840.

$3,000.

Four months after date, I promise to pay to the order of Sea-born Goodall, three thousand dollars, for value received.

(Signed,)        ALEXANDER BRYAN.
(Indorsed,)        SEABORN GOODALL.

The defendant among other things pleaded, that he had no no-tice of the dishonor of the note, until the service of the writ; but supposed and believed, that the same had been cancelled. An appeal having been taken by consent, the cause came on for final trial, before His Honor William B. Fleming, at June Term of said Court, 1847.

Counsel for the defendant offered as a witness, Alexander Bry-an, the maker of the note, to prove the intention and agreement of the parties, that the note was to be negotiated at a chartered Bank. This testimony was objected to on the ground, that it was an attempt to introduce *parol* evidence, to contradict or vary the absolute contract of the defendant to pay without notice, impor-ted by his blank and unrestricted indorsement. His Honor over-ruled the objection, and the witness was sworn.

The jury having found a verdict for the defendant, counsel for the plaintiff moved for a *new trial*, upon the ground mainly,

Because, the Court admitted Alexander Bryan, a witness for the defendant, to prove a *verbal* understanding between the wit-ness, the maker of the note, and the defendant, the indorser, at the time of his indorsement, to vary the contract of *suretyship*, implied by his indorsement. Judge Fleming refused to grant a *new trial.* And to this decision, counsel for the plaintiff except-ed, and on this exception the plaintiff now relies for a reversal of the judgment.

Other questions were raised, and other proceedings were had, during the progress of the cause; but they have become wholly immaterial, by the view which we have taken of the testimony of Alexander Bryan.

[1.] Was he a competent witness to prove, as he did, the un-derstanding between the indorser and himself, that the note in controversy, was to be negotiated at some bank in Savannah or Macon, and thus vary the legal liability of the indorser, as impli-ed by his indorsement in blank, the note itself being absolute and unconditional on its face, and the indorsement unrestricted?

The statute of the state, upon which this point most depends, is in these words, "From and after the passing of this act, the practice heretofore required, of making a demand of the makers of promissory notes, and other instruments, for the payment and performance of the same, and then giving notice of such demand within a reasonable time, to the indorsers of said promissory notes, and other instruments, shall cease and become entirely unnecessary to bind said indorsers; and whenever any person whatever indorses a promissory note or other instrument, he shall be held, taken and considered as a security to the same, and be in all respects bound as security, until said promissory note or other instrument is paid off and discharged, and shall be liable to be sued in the same manner, and in the same action with the principal, or maker of said promissory note or other instrument, any law, practice or usage, to the contrary notwithstanding. *Provided always,* that nothing herein contained shall extend to any promissory notes, which shall be given for the purpose of negotiation, or intended to be negotiated at any chartered bank, or which may be deposited at any chartered bank for collection ; *And Provided, also,* that nothing contained in this act shall be so construed, as to prevent the indorser from defining his liability on the indorsement. *Prince,* 462.

Can it be proven by *parol,* that a note like the present, general and unrestricted on its face, and indorsed in *blank,* "was given for the purpose of negotiation, or was intended to be negotiated at a chartered bank ?" If it cannot, then the evidence of Alexander Bryan was improperly received, and a *new trial* should have been awarded.

This is a question of great importance, the decision of which will have a wide and extended effect on commercial paper.

The position occupied by counsel for the plaintiff in error is, that the contract of indorsement, is an express contract, and that the mere signature of the name on the back of the note, stands for the entire contract, which the law attaches, and that no evidence can be admitted to vary it. On the other hand it is maintained that the signature of the indorser is not a complete written contract, but is inchoate and imperfect, and that according to mercantile usage, and the real nature of the transaction, authority is given to fill up the indorsement, with the true agreement between the parties.

Judge Story, in his commentaries on promissory notes, says :

Stubbs *vs.* Goodall.

" Sometimes the indorsement contains a written agreement to dispense with any demand upon the maker, or with notice of the dishonor, if the note is not duly paid.   In such cases the indorser will be liable thereon, not only to his immediate  indorsee, but to any subsequent holder; for the language will be construed to import an absolute dispensation with the ordinary conditions of an indorsement ; and this proceeds upon the just maxim, *Qui libet, potest renunciare juri pro se introducto.*   But where the agreement is not on the face of the instrument, but is merely *oral* between the indorser and his immediate indorsee, the effect would seem to be limited to the immediate parties ; and even here doubts have been entertained, whether the evidence is admissible between them, since it has been thought to vary and control the ordinary obligations of an indorsement.    These doubts, however, have been overcome in America, and the doctrine is established, that such evidence is admissible." §. 148.

Were it necessary to combat this proposition, even guarded as it is by the author, we should be strongly inclined to do so, notwithstanding it is sustained by numerous and respectable authorities.   We believe it to be a departure from that rule of law which precludes the admission of parol evidence, to contradict, or substantially vary the legal import of a written agreement, than which none is better settled, or more salutary in its application to contracts.

But the dispute here is not whether it may not be shown by *parol*, that a condition beneficial for the defendant had been waived by him ; but the converse is sought, viz : an attempt is made by the defendant, to add a condition to the contract, by which he would be entitled to demand and notice, and that he was discharged for want of it.

None of the cases, I apprehend, have gone thus far.

*In the Bank of the United States vs. John O. Dunn,* 6 *Peters,* 57, an action of Assumpsit was brought against the defendant, as indorser of a promissory note, drawn by John Scott, in the following words:—$1000. Sixty days after date I promise to pay John O. Dunn, or order, one thousand dollars for value received —negotiable and payable at the United States Branch Bank at Washington.          (Signed,)             JOHN SCOTT.
(Indorsed,) J. O. DUNN, OVERTON CARR.

The signatures of the parties to the note were admitted ; and

notices of a demand of payment of the same at the Bank, and of the non-payment, were proved to have been regularly made and given. The defendant offered as a witness, Overton Carr, the second indorser of said note, who testified, that before he indorsed the same, he had a conversation with John Scott, the maker, who informed him that certain bank stock had been pledged to secure the payment of the note; that he would run no risk in indorsing it; that he communicated this statement to the President and Cashier of the Bank, who confirmed it, adding, that the indorsement was a mere matter of form, in compliance with a regulation of the Bank, requiring two city indorsers, and that they incurred no responsibility whatever. Overton Carr's testimony was objected to, and the principal question for the decision of the Court was, whether the evidence of this witness was legal, its object being to vary the contract entered into by himself, and by his co-indorser, and to show another contract of an entirely different character.

Mr. Justice McLean, who delivered the opinion of the Supreme Court, says: "The note in question was first indorsed by the defendant to Carr, and by him negotiated with the Bank. It was discounted upon the credit of the names indorsed upon the note. This is the legal presumption that arises from the transaction; and if the first indorser were permitted to prove that there was a secret understanding between himself and the assignees, that he should not be held responsible for the payment of the note, would it not seriously affect the credit of this description of paper? Might it not in many cases operate as a fraud upon subsequent indorsees?"

"The liability of a party to a bill of exchange or promissory note, has been fixed on certain principles which are essential to the credit and circulation of such paper. These principles originated in the convenience of commercial transactions, and cannot now be departed from."

"The facts stated by the witness, Carr, are in direct contradiction to the obligation implied from the indorsement of the defendant. By his indorsement, he promised to pay the note at maturity, if the drawer should fail to pay it. The only condition on which this promise was made was, that a demand should be made of the drawer when the note should become due, and a notice given to the defendant of its dishonor. But the facts stated by the witness would tend to show that no such promise was made.

Does not this contradict the instrument? and would not the precedent tend to shake if not destroy the credit of commercial paper? On this ground alone the exception would be fatal."

In our opinion, the question made by the record before us, is *here* directly met, and properly decided upon principle, in favor of the party, who has prosecuted this writ of error.

The learned commentator on promissory notes, in a note to the section already quoted from that work, (p. 164,) remarks, that "there is some difficulty in reconciling this doctrine with that promulgated by the Supreme Court of the United States, in the case of *Penn*[?]r *vs. Bank of Columbia*, 9 *Wheat.* R. 581."

I would respectfully submit, that the only point decided in the case in Wheaton, is that, "*parol* evidence of a local custom or usage, is admissible in order to ascertain the understanding of the parties, with respect to their contracts made with reference to it:" a doctrine stated by Professor Greenleaf, and all other elementary writers on evidence, as one of the exceptions to the general rule, which forbids the admission of *parol* evidence to contradict or vary a written contract. 1. *Green. on Ev. p.* 335.

Any number of State decisions might be adduced in corroboration of the doctrine in 6. *Peters.* I will select one only, from 3 *N. Hampshire,* 132, on account of its striking analogy to the case at bar. It seems too, to have been thoroughly discussed and well considered.

A note of hand was blank indorsed by the defendant, and delivered to the plaintiffs, in satisfaction of a debt previously due from him to them. The plaintiffs offered to prove that, at the time the note was so indorsed to them, the defendant agreed to be responsible for the payment of the note, at all events without a demand upon the maker, or notice of the non-payment. But the Court rejected the evidence, and a verdict was taken for the defendant, subject to the opinion of the Court, upon the above facts. Richardson, C. J., delivered its opinion.

"The question to be decided in this case is, whether, when a note of hand has been transferred by an indorsement in blank, the indorsee can be permitted, in an action against the indorser of the note, to show that it was agreed at the time that the note was thus transferred, that the indorser should be liable at all events, without any demand of the note being made of the maker, and without notice of its non-payment."

" When the payee of a note by an indorsement in blank, transfers the note to another, he enters into a contract with the indorsee, most of the terms of which, after much litigation, have been settled in a long train of decisions, and no longer admit of any doubt. It is a part of the contract, that a seasonable demand of payment should be made of the maker, and due notice of the nonpayment be given to the indorser. It is not to be doubted, that a note might be so indorsed as to render the indorser liable without a demand or notice: Nor is it to be questioned that the indorser may, by a subsequent agreement, render the proof of demand and notice unnecessary to the maintenance of the action against him." The learned Judge, after reviewing most of the precedents relied on by the defendant, proceeds, " The principle laid down in those cases, that a party to a contract may waive any provision in it, made for his benefit, is unquestionable. But it seems also to be well settled, that parol evidence cannot be received to vary or control the settled legal import of a commercial instrument. And such being in our opinion the settled law of the land, we think that the evidence which was rejected in this case was properly rejected."

We entirely concur in this firm and manly adherence to a rule of law which has done more to prevent frauds and perjuries than the statute passed professedly for that object. Better by far to rest upon broad principles, capable of being comprehended by the humblest capacity, and especially, where they have proved so beneficent in their results, than to be forever frittering them away by nice and attenuated distinctions, which elude even the most subtle.

"It seems now settled," says Mr. Chitty in his *Treatise on Bills,* *p.* 142, *(* 10 *Am. Ed.)* "that *verbal* evidence is not admissible to *contradict* or *vary* an absolute engagement to pay money on the face of the bill or note, although, as between the original parties, evidence may be adduced to establish a defence, on the ground of *total want* of consideration, *failure of it,* or *illegality.* And if the instrument on the face of it purport to be an absolute engagement to pay money, no evidence of a verbal agreement at the time to renew or give indulgence, will be admitted to defeat the action on the bill or note. This is a general rule, not confined to the bills of exchange, but extends to all written contracts. *And the same rule applies* to *an indorsement in blank,* in which case the indorser will

not be allowed to prove that he had indorsed the note, by way of collateral security for certain advances made by the indorsee, (the plaintiff) to third persons, and that the plaintiff had agreed at the time to renew."   (p. 144.)

And again, *Ch.* 10. *p.* 466 : " Even an express verbal agreement between *all* the parties to a bill or note, *that it should not be put in suit till certain estates were sold,* although it misled and induced the holder not to give regular notice of non-payment, when the bill or note fell due, constitutes no excuse for such neglect ; *because, in point of law, no such parol agreement was available to the party as a defence to an immediate action ;* so as it was inoperative for one purpose, it ought not to have any effect, and therefore, notwithstanding it, notice should have been given."— *See also Bayley on Bills, Ch.* 12. *p.* 492, 493, *(5th Ed.)*   3 *Barn. and Ald.* 223.   1 *Chitty, R.* 661.   11 *Barn and C.* 729.   1 *Gou. R.* 74.   1 *Maule and S.* 21.   *Stark. on Ev. part* 11, 279.

In *Hoare and others vs. Graham and another,* 3 *Campb.* 57, in an action by the indorsees against the payees of a promissory note, the defendants gave in evidence, that they had indorsed the note by way of collateral security, for certain advances made by the plaintiffs to Messrs. Grill & Son ; and the *verbal* condition of the defendant's indorsement was, that the note should be renewed when it become due, to which the plaintiffs acceded, but they afterwards demanded payment, instead of calling for a renewal.

*Lord Ellenborough.*   " I do not think I can admit evidence of this sort.   What is to become of bills of exchange and promissory notes, if they are to be cut down by a secret agreement, that they shall not be put in suit.   The *parol* condition is quite inconsistent with the written instrument.   I will receive evidence that the note was indorsed to the plaintiffs *as a trust,* but the condition for a renewal entirely contradicts the instrument, which the defendants have signed—such an agreement rests in confidence and honor only, and is not an obligation of law.   There may, after a bill is drawn, be a binding promise, for a valuable consideration, to renew it when due, but if the promise is *cotemporaneous* with the drawing of the bill, the law will not enforce it.   This would be incorporating with a written contract an incongruous *parol* condition."

So in *Free vs. Hawkins,* 8 *Taunton,* 89, Assumpsit was brought on a promissory note indorsed by the defendant as security for the

debt of the maker ; and it was held that evidence of a *parol* agreement at the time of making and indorsing the note, that payment should not be demanded till after the sale of the estates of the maker, could not be received.

*Dallas, J.* "I am of the opinion that, the evidence tendered was properly rejected. If the agreement now set forth was meant to be the understanding of the parties, it ought to have been expressed in the instrument. If parties mean to vary the legal operation of an instrument, they *ought to express such va*riance ; and if they do not, the legal operation remains. The effect of the evidence tendered would be to control its legal operation, and such evidence, I think, is inadmissible."

These cases are sufficient to show in the most satisfactory manner the light in which Courts of justice in England consider these contracts, and the attempt by parol proof to vary or control them ; and if the clear principle, that what is expressed in writing, and that alone is the best evidence of the contract requires any authority, they abundantly confirm that principle. And *it is worthy* of notice that both of the cases here cited were actions against the payees of promissory notes, and upon *blank indorsements.*— These are treated by the Courts as all other *written* contracts, and no proof of a *parol* agreement is allowed, either to contradict or *limit* their legal operation.

It will be perceived that the doctrine sought to be established in cases like that under discussion, arises, it is supposed, from the nature of a *blank indorsement.* Here it is insisted the written engagement is left incomplete by the parties themselves, and is capable of receiving a signification different from that which usually attends the naked signature of a party, on the back of a contract, or on a blank paper, and that facts which tend to prove that a restrictive operation was intended to be given to the signature, only ascertain and establish what the contract was; or in other words, they serve to substitute the real agreement between the parties for one which the law prescribes only where they are silent.

Concede that this is true, (but we have endeavored to show, both from principle and authority, that it is not for the purpose for which the testimony was offered, and the object to which it was intended to be applied in the present case,) still I would inquire, does even this assumption on the part of the defendant meet the provision

of our statute? It would seem that the fact that the note was given for the purpose, or with the intention of being negotiated at a bank, would have to appear not in the *indorsement*, but on the *face* of the instrument. And here nothing is left to be implied. The contract is full and complete. · Indeed, it would be absurd to suppose that this purpose or intention should be. inserted in the indorsement, or elsewhere than in the body of the bill or note.

Really then, this doctrine of *blank indorsements*, standing, to say the least of it, upon very nice or precarious grounds, and hard to be reconciled to the general rule of the law regulating the admissibility of parol evidence, is not fairly, perhaps, involved in this issue. The act evidently contemplates notes which are made, or *given*, to be negotiated at bank, and it is to the *face* of the paper which is complete, and not to the *back*, to which we must look, to ascertain what the understanding of the parties was.

A note negotiable and payable at bank, and indorsed *in blank*, will be construed to fall within the true intent and meaning of the *proviso* in the act, and the party will be entitled to demand and notice. If drawn payable generally, the indorser *in blank* will be treated as a *security*. He may nevertheless define his liability in the indorsement, and the fact that the statute authorizes this to be done, is a strong presumption, that otherwise it was intended that the liability should depend on the character of the note, and the legal effect of his signature on the back of it.

Judgment reversed.