LUCY HARRIS BREWER

vs No. 7418.

L. EDWARD CLARK and
LOUIS R. HOOVER.

January 16th, 1919.

CHARLES F. CLAIBORNE, JUDGE.

This suit is upon the following note:

$75C. New Orleans, La., November 28th., 1916.
One year after date I promise to pay to the order
of myself at my office in New Orleans, La., Seven
Hundred and fifty dollars, for value received,
with interest at the rate of eight per cent per
annum from date until paid.

 "Signed" L. R. Hoover.

 Endorsed: L. R. Hoover.
 " L. Edward Clark.

The facts of the case are as follows.

The defendant Hoover was an attorney-at-law and
Notary Public rendering services as such to J. W. Gillman
and L. Edward Clark engaged in the sale of oil lots under
the name of the "Old Lake Petroleum Company"; it was agreed
that all the services rendered by Hoover were to be paid to
him by the transfer to him of oil lots; in accordance with
this agreement, the said Clark and Gillman, by a document
dated November 28th, 1916, acknowledged that they had sold
to Hoover 34 oil lots situated 17 in Mississippi and 17 in
Caddo Parish for the price of $1020 according to a certain
warranty deed; that although the deed showed that the price
had been paid, it was however understood that Hoover was to
pay the vendors $270 eventually in notarial services to be
rendered, and was to execute a mortgage for $750 on the 34
lots above mentioned, payable one year after date with eight
per cent interest, the payment of which was also to be made
by notarial services to be rendered by Hoover to Clark and

145

Gillman, an account of which was to be kept and to be applied first to the payment of the note and then to the $270; that in the event the services rendered by Hoover should not be sufficient in amount to pay the mortgage note of $750 "that then in that event the parties of the first part (Gillman & Clark) hereby agree and bind themselves to obtain extension of said mortgage note, or to pay the same and to collect from party of the second part (Hoover) through notarial services to be rendered them".

Accordingly, on the same day, by act of F. C. Marx, Notary, Hoover made the note of $750 described hereinabove and secured the payment of the same by a mortgage in favor of L. Edward Clark upon the 34 lots above mentioned. By that act, all certificates required by law were dispensed with.

By a letter dated December 18th, 1916, Clark authorized Joseph H. Brewer, an attorney at law, to sell the above mentioned note of $750 for the sum of $600 cash, out of which Brewer was to receive $50 for his services leaving a net amount of $550 for Clark. Brewer sold the note to his mother, the plaintiff herein, and in payment gave his own check for $550 to the order of L. Edward Clark. The check was endorsed by Clark and paid through the Clearing house. The receipt for this check of $550, typewritten on a letter-head of Joseph H. Brewer and signed by Clark reads as follows:

"By purchase price of mortgage note of $750 dated November 28th, 1916, payable one year after date, drawn by L. R. Hoover, payable to his own order and endorsed by himself & L. Edward Clark sold this day $600.00".

By a contract dated February 28th, 1917, the partnership of Clark and Gillman was dissolved; Gillman sold out to Clark who took over the assets and assumed the obligations of the partnership.

Plaintiff prayed for judgment in solido against Hoover and Clark, with recognition of mortgage.

146

Hoover admitted all the allegatiors of the petition, and under the document dated November 28th, 1916 by which Clark and Gillman assumed to pay the note, called Clark in warranty.

Clark denied any liability as indorser or otherwise; he averred that being the owner of the note of $750 he sold the same to the plaintiff at a discount of $250 ($150) besides a brokerage of $50 "and merely indorsed the said note in order to transfer respondent's (his) title therein and for no other purpose, and the said plaintiff purchased said note aforesaid in the faith of the security of said mortgage and the signature of L. R. Hoover; that it was distinctly understood and agreed that the purchase aforesaid, and the discount aforesaid, and the indorsement for transfer aforesaid relieved respondent from any liability on said note so transferred"; that the plaintiffshould be restricted to the mortgage, and under no circumstances can he be made liable until the plaintiff has discussed it.

Upon the trial of the case, the defendant Clark was put upon the stand as a witness and asked for what purpose he had put his signature upon the back of the note. To this question plaintiff objected upon the ground that "parol evidence could not be admitted to explain what the note was given for". The objection was sustained, and Clark reserved a bill.

There was judgment in favor of plaintiff and against Hoover and Clark in solido as prayed for, and in favor of Hoover against Clark.

Clark alone has appealed.

The main question in the case is whether Clark can, by parol, sustain his defense; in other words whether he can show, by parole, that he indorsedrthe note merely to transfer it as a vendor and not as an indorser, and that it was agreed that he was relieved from any liability on the note.

We are aware of the many conflicting opinions upon this question, but we prefer to adhere to those which have applied the long recognized principle of the common law and of our own Civil Code as well as of the commercial law relative

to promissory notes which forbid the admission of parol testimony to contradict or vary written documents except in exceptional cases. 4 ᄼᄼ

In the 42 A., 112, the Court said: "Better by far to rest upon broad principles capable of being comprehended by the humblest capacity and especially where they have proved so beneficent in their results, than to be forever frittering them away by nice and attenuated distinctions which elude even the most subtle".

In 2 Kent ⌐ 556, it is stated to be "an inflexible rule, that parol evidence is not admissible to supply or contradict, enlarge or vary, the words of a contract in writing. That would be the substitution of parol to written evidence under the hand of the party, and it would lead to uncertainty, error and fraud. 1 Greene on Ev ⌐ 275, 281.

In 2 Parsons on Notes and Bills, p 501, we read: x x x it is a firmly settled principle that parol evidence of an oral agreement alleged to have been made at the time of the drawing, making, or indorsing of a bill or note, cannot be permitted to vary, qualify, or contradict, or add to, or substract from, the absolute terms of the written contract". 1 Daniel ⌐ 717.

"One species of defence, sometimes attempted upon a bill or note, is, that there was some bargain, when the bill or note was given or transferred, for a renewal or indulgence, or for exempting particular parties from being sued. But, it is a settled rule that no such defence can be supported by oral evidence, where it is inconsistent with the tenor of the bill or note. x x x So in an action against the endorser of a note, evidence cannot be received of a parol agreement by the plaintiff with the defendant, that he should not be held as endorser". Bayley on Bills p 521, 523; Smith Merc.Law p 327; 4 Am.& Eng.En. Law p 146.

17 Cyc p 589; "The general rule is that bills, notes, and other instruments of a similar nature are not subject to be varied or contradicted by parol or extrinsic evidence". 8 C.J.737.

Thus it has been held in the following cases that parol

148

testimony was inadmissible to prove that the indorsement on
the note was placed there merely for the purpose of transfer,
or with the understanding that the indorser would not be lia-
ble. 6 Peters, 57; 4 Ga., 106; 93 Ills., 101; 37 Ind., 107;·
20 Kansas, 230 and numerous authorities there quoted,-38 Conn.,
15; 23 Me., 392(399); 71 Mich., 675 (679) and cases there
cited - 72 Mo., 174; 42 Wisc., 56, 487; 27 Barborn 489; 8 Ala.,
247; 1 Daniel Neg. Ins. § 719; Abbot Trial Ev. p 415; Bayley
on Bills p 521, 523; 2 Parsons on Notes p 23, 521.

In Lee vs Pile, 37 Ind., 107, the Court said:
"The agreement by parol that the plaintiff should
take the note without recourse on the endorser as
part of the contract made at the time the notes
were indorsed and delivered, could neither be al-
leged nor proved for the reason that it would be
in contradiction of the legal effect of the in-
dorsement". *104. U. S. 35.*

In 17 Cyc p 592 note 30 the following case is cited:
"Where a husband and wife have executed a joint
note and a mortgage on her lands to secure it, the
husband cannot escape personal liability on the note
by setting up a contemporaneous agreement to the ef-
fect that he was to incur no personal liability but
was to sign the note simply as evidence of his con-
sent to the note and mortgage by her". Jackson vs
Jackson, 12 Ky. L. Rep., 388.

Daniel on Neg. Ins. p 704 §.723 says:
"It would be useless to attempt to reconcile the au-
thorities on the subject; but the true line of dis-
tinction which should be observed is this: when it
appears that the indorsement was accompanied by a
transfer for value, and is unimpeached by fraud, it
imports a distinct liability,which cannot be varied;
but when several indorse for accommodation, or the
indorsement was made for any of the peculiar purposes
which we have already described, extrinsic evidence

149

is admissible to show them"; in other words to show that the indorsement was without legal consideration. Sec. 63 of Act 64 of 1904 p 157 provides:

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity".

Sec. 67:

"Where a person places his endorsement on an instrument negotiable by delivery he incurs all the liabilities of an endorser".

To permit testimony to prove that Clark was only a transferor and not an indorser would be to contradict the note and vary his legal position which he cannot be permitted to do by parol.

The note was payable to the order of the maker and endorsed by him in blank. This was equivalent to a note payable to bearer. Such a note was negotiable by delivery and did not need the signature of Clark to transfer it. Sec. 9 § 5 and Sec. 34 of Act 64 of 1904; Daniel § 693, 729.

If Clark had intended to restrict his liability he might have done so by writing above his signature the words without recourse. Sec. 38 Neg. Inst. Act

The fact that the land mortgaged may have been worth the full amount of the note is no argument to support the defense that the plaintiff agreed not to look to the indorsement of Clark; it might also be an argument to prove that Clark was willing to indorse the note which was so well secured.

Our own examination of the authorities lead us to conclude that a party to a note may show by parol that he affixed his signature to a note under circumstances which carry with them no liability for the payment of it to certain parties such as an indorsement for accommodation, for collection, 8 La.,472, for receipt, 29 A., 551; but where his signature imports a lia-

bility under the law at the time it was affixed, he cannot, by parol, prove any different character nor any agreement to be relieved from the legal effect of the indorsement, as that would be an attempt to contradict and vary the note.

This conclusion is also in exact keeping with the Civil Law. In the case of Boner vs Mahle, 3 A., 600, the plaintiff had sold some slaves on credit, and in order to secure the notes Mahle gr anted a mortgage upon certain lots of ground -; no vendor's privilege was reserved in the act. The note was not paid and the vendor sued claiming the privilege upon the slaves. The purchaser contended that it had been the intention of Boner and the agreement of the parties to waive the privilege and rely exclusively upon the mortgage. He offered the testimony of the Notary to make that proof. This was objected to and the objection was sustained. The Court said: p 606:

> "It is obvious that the attempt here is to contradict the authentic written evidence of the parties, to give parol evidence against the act. The written contract, by its legal effect, confers the vendor's privilege; by the testimony, the plaintiff seeks to show that the parties intended that no such privilege should exist - to substitute another contract for that which they have in a solemn writing expressed - to establish that they meant one thing but signed another. Let it be observed that the act is not in itself unintelligible. What is written in the act is unambiguous, and the legal effect of what is written is also clear".

See also 11 La 135 —

The smallness of the price paid, if small, cannot defeat plaintiff's right to recovery. In 27 A., 95 - Scott vs Seelye, it was held that $100 was a valuable consideration for a note of $2500. Brannan's Neg. Ins. p 66.

The defendant Clark was not entitled to notice of nonpayment. Hoover was clearly an accommodation maker and Clark received the consideration of the note. Besides, Clark had no right of action against Hoover as he had bound himself towards Hoover, at least, to pay the note at maturity. The object of notice is to preserve the rights of the indorser against the

maker; if he has no rights against him he is not entitled
to notice. Sec. 115 of Act 64 of 1904 p 163 § 3.

"When the money raised upon a note is received by
an indorser, and he is the person ultimately to
pay, notice to him of non-payment by the maker is
perhaps not necessary". Bayley on Bills p 316.
Clark *being the real debtor and* having bound himself towards Hoover to pay
the note, was properly called in warranty. C. P. 378. *C.C. 2106*

Nor can Clark avail himself of the plea of discussion. A debtor in solido is not entitled to the plea, 3 R.,
*2 m 336 (354) - 1 n.S. 478 - 9 m 321 -*
160, C. C. 3045, and there is no law which compels a creditor
to resort to the property of one of two debtors in solido
mortgaged for the payment of the debt before calling upon
the other debtor. N.O. Canal Co. vs Escoffier 2 A., 830 *5 m 364-*
*33 Dallas Rep Leg 308 & 1397-*
Judgment affirmed.

January 16th, 1919.