BANK OF THE UNITED STATES, PLAINTIFF IN ERROR v. JOHN O. DUNN, DEFENDANT IN ERROR.

It is a well settled principle, that no man who is a party to a negotiable instrument, shall be permitted by his own testimony to invalidate it. Having given it the sanction of his name, and thereby added to the value of the instrument by giving it currency, he shall not be permitted to testify that the note was given for a gambling consideration, which would destroy its validity.

The case of Renner v. The Bank of Columbia, 9 Wheat. 587, cited and affirmed.

Parol evidence may be admitted to explain a written-agreement, where there is a latent ambiguity; or a want of consideration may be shown in a simple contract; or to defeat the plaintiff's action, the defendant may prove that the note was assigned to the plaintiff, in trust for the payee.

It is competent to prove by parol that a guarantor signed his name in blank on the back of a promissory note, and authorised another to write a sufficient guarantee over it.

In Pennsylvania there is no court of chancery, and it is known that the courts in that state admit parol proof to affect written contracts, to a greater extent than is sanctioned in the states where a chancery jurisdiction is exercised.

The liability of parties to a bill of exchange or promissory note, has been fixed on certain principles, which are essential to the credit and circulation of such paper. These principles originated in the convenience of commercial transactions, and cannot now be departed from.

An agreement by the president and cashier of the Bank of the United States, that the indorser of a promissory note shall not be liable on his indorsement, does not bind the bank. It is not the duty of the cashier and president to make such contracts; nor have they the power to bind the bank, except in the discharge of their ordinary duties. All discounts are made under the authority of the directors, and it is for them to fix any conditions which may be proper in loaning money.

ERROR to the circuit court of the United States for the county of Washington, in the district of Columbia.

In the circuit court, the Bank of the United States instituted an action of assumpsit against John O. Dunn, as indorser of a promissory note drawn by John Scott, in the following words:

"$1000—Sixty days after date I promise to pay John O. Dunn or order one thousand dollars for value received, negotiable and payable at the United States Branch Bank in Washington.                    JOHN SCOTT.

Indorsed J. O. Dunn.—Overton Carr."

The signatures of the parties to the note were admitted, and notice of a demand of payment of the same at the Bank,

and of the non-payment, were proved to have been regularly made and given.

The defendant offered as a witness Overton Carr, the indorser of said note, who testified that before he indorsed the same, he had a conversation with John Scott, the maker, and was informed by him, that certain bank stock had been pledged, or was to be pledged, by Roger C. Weightman, as security for the ultimate payment of the said note, and that there would be no risk in indorsing it. 'That the witness then went into the room of the cashier of the plaintiffs' office of discount and deposit at Washington, and found there the cashier, and Mr Thomas Swann the president of the said office, to whom he communicated the conversation with Mr Scott, and from whom he understood, upon his inquiry, that the names of two indorsers, residing in Washington, were required upon the said note, as a matter of form, and that he would incur no responsibility (or no risk) by indorsing the said note. He did not recollect the conversation in terms, but such was the impression he received from it. That he went immediately to the defendant and persuaded him to indorse the note, by representing to him that he would incur no responsibility or no risk in indorsing it, as the payment was secured by a pledge of stock, and to whom he repeated the conversation with Mr Scott and the president and cashier. That no other person was present at the conversation, the terms of which he does not recollect; but that the impression he received from his conversation with the president and cashier, and with Scott, and which impression he conveyed to the defendant, was that the indorsers of the said note would not be looked to for payment of it, until the security pledged had been first resorted to, but that the said indorsers would be liable, in case of any deficiency of the said security, to supply the same. That neither this witness nor Mr Dunn was at the time able to pay such a sum, and that both indorsed the note as volunteers, and without any consideration; but under the belief that they incurred no responsibility (or no risk) and were only to put their names upon the instrument for form's sake. To which evidence the plaintiffs, by their counsel, objected, but the court permitted it to go to the jury.

The plaintiffs then offered as a witness, Richard Smith, the

cashier of their office of discount and deposit aforesaid, who was summoned on the part of the defendant, and who testified that he has no recollection of the conversation mentioned by the said Carr; but that no stock was ever pledged for the payment of the said note. That Roger C. Weightman had given to the said office a guarantee, that he would pay the said note, in case the parties to the same should fail to do so, after all legal and proper measures had been taken to procure the payment of it by them. That he is certain that nothing was said either by him or by Mr Thomas Swann in his presence, as to the indorsers not being held liable for the payment of the said note. That it was contrary to the practice of the said office; to take indorsers on notes who were not to be held liable. That the president and himself conjointly, nor either of them, were authorised to give any such exemption to indorsers, or to determine who should be taken as indorsers on notes. That this was the province of the board of directors alone; unless when they appointed a committee of the board for that purpose. That the guarantee aforesaid was given by the said Weightman after the note had been made and indorsed.

Mr Smith, upon cross examination, having stated that he was a stockholder in the bank, the court rejected his testimony, and instructed the jury that it was not evidence.

The plaintiffs' counsel then offered to swear Mr Swann, who had been summoned as a witness on the part of the defendant; but the defendant's counsel objected to his competency for the same reason, which objection the court sustained, to which the said plaintiffs, by their counsel, excepted; and also to the admission of the testimony of Mr Carr, and the rejection of Mr Smith's testimony.

The jury found a verdict for the defendant, and judgment in his favour was entered thereon.

The plaintiffs prosecuted this writ of error.

The case was argued by Mr Lear and Mr Sergeant for the plaintiffs in error; and by Mr Coxe for the defendant.

For the plaintiffs in error it was stated, that the principal question for the decision of the court was, whether the testimony of Mr Overton Carr was legal, and should have been admitted.

The object for which that testimony was introduced, was to vary the contract entered-into by himself and his co-indorser, and to show another contract of an entirely different character.

It is a general and an important rule, that evidence of this description will not be admitted to vary or explain a contract in writing. The propriety of the rule is deduced from the obscurity and uncertainty which would be thrown over all such contracts, from the frailty of memory, and the uncertainty of understanding the parties. This rule is sustained by a number of decisions. 2 Stra. 955. 2 Camp. 205. 3 Camp. 57. 4 Camp. 127, 217. Skinner, 454. 1 Gow, 74. 8 Taunt. 92. 1 Chitty's Rep. 661. 9 Wheat. 587. 7 Mass. 238. 3 Dall. 415—1 Peters's Condensed Rep. 193.

It is admitted that there are exceptions to this rule: latent ambiguity is an exception: so also, as to the consideration in a deed, when the question was whether the receipt was conclusive evidence of payment. The decisions of the courts of the different states of the union are divided. Maine, Maryland, North Carolina on one side; Massachusetts, New York and Pennsylvania on the other. The cases are collected in a note to 3 Starkie on Evidence, (Am. Ed.) 1001, 1002.

If the deed recite a particular consideration, and " other good considerations," it may be shown what they were: but, in general, consideration cannot be denied; nor a different consideration be proved. That would invalidate the contract. The question for the consideration of the court is, whether this parol evidence shall be admitted to prove a different contract. The Pennsylvania authorities, upon which it is claimed to introduce such evidence, are to be considered as affected by the absence of a court of chancery in that state. The law of Pennsylvania as to parol evidence is peculiar, and in the case of Hurst v. Kirkbride, 1 Yeates, 139, the judges express their dissatisfaction with it. Cited, Whart. Digest, 270, for the Pennsylvania cases.

The reason for the admission of such evidence, does not apply to contracts by the operation of law. 4 Wash. C. C. Rep. 480. 5 Serg. & Rawle, 353.

Mr Coxe, for the defendant. The object of the evidence

of Mr Carr was not to render the note void at its inception; in such a case the party to the note would not be a witness. Parol evidence is admissible when it does not go to contradict or vary the original contract. There is no written contract of the indorsers of the note; the contract arises from the legal implication of his being an indorser. What is the legal effect of a blank indorsement? It is only an authority to fill it up according to the agreement of the parties, and to the authority so given. All the cases agree, that as between the parties, a total want of consideration, or a partial failure of consideration may be shown. 1 Serg. & Rawle, 663. 4 Wash. C. C. Rep. 480.

Upon these principles the evidence was legal. This was the case of security in trust for the benefit of the indorsers, and parol evidence to show the trust was proper.

Mr Justice M'LEAN delivered the opinion of the Court.

In the circuit court for the district of Columbia, from which this cause is brought by writ of error, the plaintiffs commenced their action on the case, against the defendant, as indorser of a promissory note. The general issue was pleaded, and at the trial the plaintiffs read in evidence the following note:

$1000—Sixty days after date, I promise to pay John O. Dunn, or order, one thousand dollars, for value received, negotiable and payable at the United States Branch Bank in Washington.

JOHN SCOTT.

On the back of which was indorsed,

J. O. DUNN.

OVERTON CARR.

The signatures of the parties were admitted, and proof was given of demand at the bank, and notice to the indorsers.

The defendant then offered as a witness Overton Carr, an indorser of said note, who testified, that before he indorsed the same, he had a conversation with John Scott, the maker, and was informed by him, that certain bank stock had been pledged, or was to be pledged, by Roger C. Weightman, as security for the ultimate payment of the said note, and that there would be no risk in indorsing it. That the witness then

went into the room of the cashier of the plaintiffs' office of discount and deposit at Washington, and found there the said cashier, and Thomas Swann the president of the said office; to whom he communicated the conversation with Mr Scott, and from whom he understood, upon inquiry, that the names of two indorsers, residing in Washington, were required upon the said note, as a matter of form; and that he would incur no responsibility (or no risk) by indorsing the said note. He does not recollect the conversation in terms, but such was the impression he received from it.

That he went immediately to the defendant, and persuaded him to indorse the note, by representing to him, that he would incur no responsibility, or no risk, in indorsing it, as the payment was secured by a pledge of stock; and to whom he repeated the conversation with Mr Scott, and said president and cashier. That no person was present at the conversation, the terms of which he does not recollect; but that the impression he received from this conversation with the aforesaid president and cashier, and with the said Scott, and which impression he conveyed to the defendant, was, that the indorsers of said note would not be looked to for payment, until the security pledged had been first resorted to; but, that the said indorsers would be liable in case of any deficiency of the said security to supply the same. That neither this witness, nor Mr Dunn, was at the time able to pay such a sum, and that both indorsed the note as volunteers and without any consideration; but under the belief that they incurred no responsibility (or no risk), and were only to put their names to the paper for form sake.

To which evidence the plaintiffs, by their counsel, objected, but the court permitted it to go to the jury.

The plaintiffs examined as a witness Richard Smith, the cashier, whose testimony was overruled: and then Thomas Swann, the president of the bank, was offered as a witness and rejected; it appearing that they were both stockholders in the bank. To this decision of the court, a bill of exceptions was taken by the plaintiffs; and exception was also taken to the evidence of Overton Carr.

On this last exception, the plaintiffs rely for a reversal of

the judgment of the circuit court. And, first, the question as to the competency of this witness is raised.

He is not incompetent, merely from the fact of his name being indorsed on the bill. To exclude his testimony, on this ground, he must have an interest in the result of the cause. Such interest is not apparent in this case; and any objection which can arise from his being a party to the bill, goes rather to his credibility than his competency.

But it is a well settled principle, that no man who is a party to a negotiable note, shall be permitted, by his own testimony, to invalidate it. Having given it the sanction of his name, and thereby added to the value of the instrument by giving it currency, he shall not be permitted to testify, that the note was given for a gambling consideration, or under any other circumstances which would destroy its validity. This doctrine is clearly laid down in the case of Walton et al. assignees of Sutton v. Shelley, reported in 1 Term Rep. 296, and is still held to be law, although in 7 Term Rep. 56, it is decided, that in an action for usury, the borrower of the money is a competent witness to prove the whole case.

Several authorities are cited by the plaintiff's counsel to show that parol evidence is not admissible to vary a written agreement.

In the case of Hoare and others v. Graham and another, 3 Camp. 56, the court lay down the principle, that "in an action on a promissory note or bill of exchange, the defendant cannot give in evidence a parol agreement entered into when it was drawn, that it should be renewed and payment should not be demanded when it became due.

This court, in the case of Renner v. The Bank of Columbia, 9 Wheat. 587, in answer to the argument that the admission of proof of the custom or usage of the bank would go to alter the written contract of the parties, say, "if this is the light in which it is to be considered, there can be no doubt that it ought to be laid entirely out of view: for there is no rule of law better settled, or more salutary in its application to contracts, than that which precludes the admission of parol evidence, to contradict or substantially vary the legal import of a written agreement."

Parol evidence may be admitted to explain a written agree-
Vol. VI.—H

ment where there is a latent ambiguity; or a want of consideration may be shown in a simple contract; or, to defeat the plaintiff's action, the defendant may prove that the note was assigned to the plaintiff, in trust, for the payer.   6 Mass. 432.

It is competent to prove by parol that a guarantor signed his name in blank, on the back of a promissory note, and authorised another to write a sufficient guarantee over it.   7 Mass. 233.

To show in what cases parol evidence may be received to explain a written agreement, and where it is not admissible, the following authorities have been referred to.   8 Taun. 92. 1 Chit. 661.   Peake's Cases, 40.   Gilbert's Rep. 154.

On the part of the defendant's counsel it is contended, that between parties and privies to an instrument not under seal, a want of consideration in whole or in part may be shown. That the indorsement in question was made in blank; and that it is competent for the defendant to prove under what circumstances it was made.   That if an assurance were given at the time of the indorsement, that the names of the defendant and Carr were only required as a matter of form, and that a guarantee had been given for the payment of the note, so as to save the indorsers from responsibility; it may be proved, under the rule which permits the promissor to go into the consideration of a note or bill between the original parties.

In support of this position authorities are read from 5 Serg. & Rawle, 363, and 4 Wash. C. C. Rep. 480.   In the latter case, Mr. Justice Washington says, " the reasons which forbid the admission of parol evidence to alter or explain written agreements and other instruments, do not apply to those contracts implied by operation of law, such as that which the law implies in respect to the indorser of a note of hand.   The evidence of the agreement made between the plaintiffs and defendants, whereby the latter were to be discharged on the happening of a particular event, was therefore properly admitted." The decision in 5 Serg. & Rawle, was on a question somewhat analogous to the one under consideration, except in the present case there is no allegation of fraud, and the decision in that case was made to turn in part, at least, on that ground.

In Pennsylvania there is no court of chancery, and it is known that the courts in that state admit parol proof to affect

written contracts, to a greater extent than is sanctioned in the states where a chancery jurisdiction is exercised.   The rule has been differently settled in this court.

The note in question was first indorsed by the defendant to Carr, and by him negotiated with the bank.   It was discounted on the credit of the names indorsed upon the note.   This is the legal presumption that arises from the transaction, and if the first indorser were permitted to prove that there was a secret understanding between himself and his assignees that he should not be held responsible for the payment of the note, would it not seriously affect the credit of this description of paper? Might it not, in many cases, operate as a fraud upon subsequent indorsers?

The liability of parties to a bill of exchange or promissory note, has been fixed on certain principles, which are essential to the credit and circulation of such paper.   These principles originated in the convenience of commercial transactions, and cannot now be departed from.

The facts stated by the witness Carr are in direct contradiction to the obligations implied from the indorsement of the defendant.   By his indorsement, he promised to pay the note at maturity, if the drawer should fail to pay it.   The only condition on which this promise was made, was, that a demand should be made of the drawer when the note should become due, and a notice given to the defendant of its dishonour.   But the facts stated by the witness would tend to show that no such promise was made.   Does not this contradict the instrument; and would not the precedent tend to shake, if not destroy, the credit of commercial paper.   On this ground alone the exception would be fatal; but the most decisive objection to the evidence is, that the agreement was not made with those persons who have power to bind the bank in such cases.   It is not the duty of the cashier and president to make such contracts; nor have they the power to bind the bank, except in the discharge of their ordinary duties.

All discounts are made under the authority of the directors, and it is for them to fix any conditions which may be proper in loaning money.   If, therefore, the evidence were clear of other legal objections, it could not have the effect to release the defendant from liability.   The assurances relied on, if made,

were not made by persons authorised to make them. The bank is not bound by them; nor would it be bound if the assurances had been made in so specific and direct a manner as to create a personal responsibility on the part of the cashier and president.

Upon a full view of the case, the court are clearly of the opinion, that the evidence of Carr should have been overruled by the circuit court; or they should have instructed the jury that the facts proved were not in law sufficient to release the defendant from liability on his indorsement. The judgment of the circuit court must therefore be reversed, and a venire de novo awarded.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Columbia, holden in and for the county of Washington, and was argued by counsel; on consideration whereof it is ordered and adjudged by this Court, that the judgment of the said circuit court in this cause be, and the same is hereby reversed; and that this cause be, and the same is hereby remanded to the said circuit court, with directions to award a venire facias de novo.