Bement *et al.*
*vs*
McClaren.
ion, the judgment below is affirmed with costs and damages.

*Robinson* and *Johnson* for appellants: *Hanson* for appellee.

---

Debt.

*Case* 93.

# Bement *et al. vs* McClaren.

### Error to the Jefferson Circuit.

*Evidence.    Competency of witnesses.    Bills of Exchange.*

*May* 19.

Chief Justice Robertson delivered the Opinion of the Court.

Question stated.

The only question in this case is whether, in an action by an assignee against the obligors, the assignor of a promissory note made payable to order in any of the banks of the City of *Louisville*, is a competent witness to prove that the note was executed without any good or valuable consideration.

Ancient common law and modern adjudications establish the competency of a witness whose interest is equal on both sides.

If the note be not deemed negotiable paper, in the technical sense of the mercantile law, modern adjudications, as well as the principles of the more ancient common law, indisputably establish the competency of such a witness when his interest is equiponderant, and especially when, as in this case, it seems to preponderate against the defence he is called to sustain by his testimony.

Ancient adjudications in England.

In *Walton et al.* vs *Shelly*, (1 *Term Rep.* 161,) it was decided by the Court of King's Bench, in England, that the "endorser of a note, independently of any question "of interest, could not be permitted to prove a note void "which he himself had endorsed."

In that case *Lord Mansfield*, admitting that the witness had no interest, said however: "But what strikes me is "the rule of law founded on public policy, which I take "to be this—that no party who has signed a paper or "*deed* shall ever be permitted to give testimony to inval-"idate that instrument which he hath so signed."—"The "civil law says, *nemo allegans suam turptudinem est*

" *audiendus;*" and upon that assumption the case was decided.

In *Bent* vs *Baker*, (3 *Term Rep.* 27,) *Lord Kenyon* then being *Chief Justice*, the case of *Walton et al.* vs *Shelly*, was shaken in its principle, if not altogether overruled—*Buller*, however, suggesting that *Lord Mansfield's* argument should still be applicable to *negotiable paper*.

But, in the still later case of *Jordaine* vs *Lashbrook*, (7 *Term Rep.* 335,) the doctrine, as held for the first time in *Walton et al.* vs *Shelly*, was entirely overruled as an unauthorized and injurious innovation upon the common law, which recognized no other causes of incompetency to testify as a witness than *interest*, *infamy*, and want of understanding or of consciousness of future accountability, and left all other objections as applying to the credit only. And this case of *Jordiane* vs *Lashbrook* seems to have been adhered to in England ever since; for in *Jones* vs *Brooks*, (4 *Taunton*,) it was conceded by the Court and all the counsel on both sides to be the *then* settled law of England, that an endorser of even a bill of exchange, if not interested, was a competent witness to prove that the consideration was illegal and void.

The later adjudications in England.

In *Massachusetts*, *New York*, and *Pennsylvania*, the rule in *Walton et al.* vs *Shelly*, as restricted to *mercantile paper* by *Buller*, in *Bent* vs *Baker*, has been recognized by the local judiciary. But in *Tennessee* and *Virginia*, the case of *Jordaine* vs *Lashbrook* has been followed as being the more rational and authoritative.

The adjudications in N. York and Pennsylvania, Virginia and Tennessee *contra.*

In *Kentucky* this question has never been decided by this Court. But whether we regard the common law, or principle, analogy, policy, or the intrinsic authority of adjudged cases, we are strongly inclined to the conclusion that the true rule of law is recognized in the case of *Jordaine* vs *Lashbrook, supra*, and in that of *Taylor et al.* vs *Beck*, (4 *Randolph's Va. Rep.* 416.)

The doctrines of evidence in Jordaine *vs* Lashbrook approved.

The comprehensive principle assumed in *Walton et al.* vs *Shelly* was never recognized before or since the decision that case, either in *England* or *America;* for that "*no one should be heard alleging his own turpitude,*" was a maxim of both the *civil* and common law, applicable to parties, not to witnesses; and no rule of evidence is more

The maxim, both of *civil & common law*, 'that no one shall be heard alleging his own turpitude,' is applicable to *parties* not *witnesses.*

universal than that which admits accomplices as compe-
tent witnesses to testifiy against their associates in guilt—
subscribing witnesses to *wills* and *deeds* to prove the invalid-
ity of those documents in consequence of incapacity or fraud
in the execution of them, although accredited by their own
attestations as genuine and valid—and even *parties* to con-
veyances, bonds, and other specialties not mercantile, to
invalidate them by their testimony as witnesses for others
who might be injuriously affected by them. And neither in
England nor in any of the states of this Union has this
doctrine of *Lord Mansfield* been, so far as we are inform-
ed, applied by any Supreme Court to any other class of
cases than that of *mercantile paper*, negotiable and up-
held by a peculiar code of law in every commercial coun-
try.

But is there any consistent reason for applying such a
rule even to such a class of cases?

It is a gen'l rule
that frand or
want of consid-
eration cannot be
pleaded to an ac-
tion on a bill of
exchange against
a *bona fide* hold-
er—but whenev-
er one party to a
bill of exchange
may lawfully pl'd
any fact in his
exoneration, any
other party to the
bill may prove
that fact, who is
not interested in
establishing the
defence.

To assure credit and circulation to bills of exchange,
as a species of useful currency, the law merchant, in most
cases, forbids a party to such a bill, when sued by a *bo-
na fide* holder for a valuable consideration without notice,
to plead either fraud or want of consideration as between
himself and the party with whom he directly contracted;
and of course, if one party to a bill cannot, when sued,
plead a particular fact, another party to the same bill
could not, as a witness, prove the same unavailing and
irrelevant fact; not however because the witness is in-
competent to prove an admissible defence, but because
the fact to be proved is inadmissible and could not, there-
fore, be proved by any witness. But when the law per-
mits *one party* to a bill to *plead* a fact in bar of an action
against him, why may he not *prove* the fact by *another
party* who has no interest in his defence? If it be con-
sistent with public policy, in any excepted class of cases,
to permit a party defendant to invalidate a bill to which
he has given a delusive credit by his name, can it be in-
consistent with the same plicy to allow another and a dis-
interested party to the bill to testify to the invalidating
fact? surely not; for, in such a case, the only reason ever
assigned for the assumed incompetency of the witness
does not exist; and if the witness be incompetent because

his name was on the bill a *fortiori*, the defence which he is called to sustain could not be made by a defendant whose name had also helped to give circulation to the paper. If, for example, the law, for the purpose of repressing usury and unlawful gaming, permit a party to a negotiable bill, when sued, to plead that the consideration was usurious or gambling, can it be possible that the same law could be so inconsistent and even suicidal as to prohibit the defendant from proving his plea by another party to the bill who has no interest in the event of the suit?

If it be consistent with the policy of the law to permit one party to a bill to plead a particular fact in bar of an action against him, it cannot be inconsistent with the same policy to admit, as a competent witness, another party to the bill to prove the fact lawfully pleaded.

In the case of *The Bank of the United States* vs *Dunn*, (6 *Peters*, 56,) and in that also of *The Bank of the Metropolis* vs *Jones*, (8 *Ib.* 16,) the Supreme Court of the United States said, that " it is a well settled principle that no person, who is a party to a negotiable instrument, shall be permitted, by his own testimony, to invalidate it; " and referred to *Walton et al.* vs *Shelly*, as being *"still held to be law."* But this is not *"still held to be law"* in England, as we believe. Nor can we perceive any sufficient ground of authority, reason, or policy, for holding it to be law in this state, where it has never been so adjudged. It has been "well settled" in *Massachusetts, New York*, and *Pennsylvania:* but the converse has been as *"well* settled" in *England* and *Virginia*, and upon reasons not only cogent but, to our minds, conclusive. Uncontrolled as this Court is upon this question, by the authority of adjudged cases, our decision must be governed by reason, analogy, and principle; and these are, in our judgment, all with the cases of *Jordaine* vs *Lashbrook*, 7 *Term Rep.; Jones* vs *Brooks*, 4 *Taunton*, and *Taylor et al.* vs *Beck*, 4 *Randolph*.

*Decisions of Supreme Court of U. S. according with the case of Walton* vs *Shelly*, (1 *Term Rep.* 161.) cited, and modern adjudications of England and Virginia, *contra*, referred to and approved by the Ct. upon reason, analogy, and principle.

If however, the note in this case be a bill of exchange or negotiable paper, in the technical and commercial sense, the defence pleaded, that is, that it was given with-

*Want of consideration not a good plea to action on bill of exchange by assignee.*

Note sued on is
not a bill of ex-
change, and is
assignable only
under our sta-
tute, vesting the
right of action in
the assignee—
plea of want of
consideration
was good, and as-
signor a compe-
tent witness to
establish the de-
fence.

out any good or valid consideration, was inadmissible as against the plaintiff in the action, who is an assignee.

But we are of the opinion that the note is not, in the mercantile sense, negotiable paper, but assignable merely under our local statute, authorizing the assignment of promissory notes and bonds, so as to vest in the assignee the legal right of the obligee, and no other or greater right as against the obligor. The note does not appear to have been ever negotiated in Bank, or to have been intended as a bill of exchange, or in any way to have acquired that legal character and effect.

The plea was therefore admissible; and as the obligor had a right to plead a want of consideration against the assignee, an assignor, whose interest, if he have any, is on the side of the assignee, was, in our opinion, a competent witness, to prove the fact which was legally pleaded in bar of the action.

It is, therefore, considered that the judgment of the Circuit Court, which was inconsistent with this opinion, be reversed, and the cause remanded for a new trial.

*Pirtle* for plaintiffs: *Duncan* for defendants.