# Harding *versus* Mott.

The endorser being also the payee of a negotiable note transferred before it became due, no evidence of irregularity in the transfer having been given *aliunde*, is not a competent witness for the maker, in an action against the maker by the endorsee, to prove that the note had not been negotiated in the regular course of business, that it was without consideration as between the maker and the payee, and that the endorsee knew it when he took the note. The rule in Walton v. Shelley re-affirmed.

ERROR to the District Court, *Philadelphia*.

This was an action on the case to June Term, 1850, by Edward T. Mott and others, trading as Mott, Schober & Co., *v.* Jesper Harding, on a negotiable note, as follows:

$580.　　　　　　Philadelphia, February 18, 1850.
Three months after date, I promise to pay to the order of S. D. Patterson, five hundred and eighty dollars, without defalcation, for value received.

Signed, JESPER HARDING.
.Endorsed,　　SAMUEL D. PATTERSON.

On the trial the defendant's counsel offered in evidence the depo-

2 R

[Harding v. Mott.]

sition of Patterson, the endorser of the note, to prove that the note, for which the action was brought, was obtained from Harding without consideration; that, at the time the note was given, he gave in return for it his own note for a like amount and like character, which note has never been paid by him, Patterson.   That *in February*, 1850, while the note on which suit is brought was in the possession of Patterson, he, Patterson, became insolvent, and in failing circumstances; that he communicated the facts of his insolvency and failing circumstances, and his inability to go on with his business, to Schober, one of the plaintiffs; and that at the time he communicated that fact, he transferred this note, by actual delivery, to him, Schober, with the intention of preferring the plaintiffs'. over the other creditors of him, the said Patterson; and that this intention was known to Schober at the time the note was so delivered: Mott and Schober then being responsible for the payment of large sums of money for the said Patterson.   That this was done with intent to evade the provisions of the Act of 17th April, 1843, entitled, "An Act to prevent preferences in assignments;" and in violation of the Act of 16th April, 1849, being "A Supplement to the Act relating to lunatics and habitual drunkards." And that afterwards, about the middle of March, 1850, Patterson executed an assignment to Joseph Boker, for the benefit of all his creditors, to be followed up by proof that Mr. Harding paid the note which Patterson gave him.

On the part of the plaintiff the deposition was objected to, on the ground of incompetency in the witness; and the deposition was overruled.

Its rejection was assigned as error.

*B. H. Brewster*, for plaintiff in error.—The case of Walton *v.* Shelley, 1 *Term Rep.* 296, is not law in England: 7 *Term Rep.* 599, Jordaine *v.* Lashbrooke.   It was contended that a party to an instrument was competent to prove any fact which was admissible in proof by another witness: 1 *Greenleaf Ev.* 383; 5 *Wharton* 572; 2 *Smith's Leading Cases* 57, note to case of Bent *v.* Baker.

This note was not negotiated in the usual course of business, but was transferred to secure a debt, in fraud of creditors.   The endorser knew that he was insolvent.   The preference was a nullity by Act of 17th April, 1843.

*J. Fallon*, for defendant in error.—Patterson, in the event of a verdict for plaintiff, would be liable to the defendant for *the costs* of this suit.

The principle decided in Walton *v.* Shelley, has been affirmed in Pennsylvania: 9 *Ser. & R.* 237, Bank of Montgomery Co. *v.* Walker; 2 *Watts* 265, Gest *v.* Espy; 8 *Id.* 304, Harrisburg Bank *v.* Forster; 4 *Rawle* 311.

[Harding v. Mott.]

An endorser can testify only to facts occurring *subsequent* to the negotiation of the note tending to show payment or discharge of it: 5 *W. & Ser.* 289; 3 *Barr* 381; 5 *Id.* 52; 9 *Id.* 81; *Id.* 276.

A party to a note may testify so as to impeach its validity as between the original parties, provided it be first established *aliunde* that the note was not negotiated in the regular course of business: 4 *W. & Ser.* 387, Parker *v.* Smith. But the endorser is not competent to prove that fact; he cannot, by his own testimony, remove an apparently well founded objection to his own competency: 1 *Rawle* 197, Griffith *v.* Reford; 5 *Barr* 52, Gilpin *v.* Howell.

But the evidence offered was irrelevant, and, if admitted, would not have constituted a defence. It was no defence that it was *an accommodation note.* The holder of such a note may sell or pledge it for an antecedent debt, and the endorsee may recover upon it against the maker.

But if the case came within the provision of the Act of 1849, as to assignments, the holder may still recover on the note, in the absence of any action on the part of the assignee in insolvency. The validity of the transfer is a matter between the holder and such assignee: 4 *Barr* 430; 7 *Id.* 499.

*Brewster,* in reply.—The assignee under a voluntary assignment has no more rights than the assignor himself; and Patterson could not have recovered against the maker of the note: 5 *W. & Ser.* 145.

The opinion of the Court was delivered, May 12, by

BLACK, C. J.—The principal point argued in this case is, whether the endorser of a promissory note is a competent witness for the defendant in an action by the endorsee against the maker, to prove that the note was without consideration, and that the endorsee knew that fact when he took it.

In Walton *v.* Shelley (1 *Term Rep.* 296), it was ruled that a witness could not be heard to impugn a paper to which he had set his own hand. Ten years afterwards this rule was repudiated by the same Court which established it (Jordaine *v.* Lashbrooke, 7 *Term Rep.* 600). In New York it was adopted in Winton *v.* Saddler (3 *Johns. Cases*), and abandoned afterwards in Stafford *v.* Rice (5 *Cowen* 25), Bank *v.* Hilliard (5 *Cowen* 158), Williams *v.* Walbridge (3 *Wendell* 416). But several of the other states have received the doctrine in a modified shape, and maintained it steadily; for instance, Massachusetts, Maine, and New Hampshire. It has received the express endorsement of the Supreme Court of the United States, in the Bank *v.* Dunn (6 *Peters* 51), and in the United States *v.* Leffler (11 *Peters* 95). In Pennsylvania it was recognised in Pemberton *v.* Pleasants (2 *Dall.* 196), and has been adhered to by this Court ever since, in a great number of cases,

though in Griffith *v.* Reford (1 *Rawle* 197), it escaped an overthrow very narrowly, HUSTON and TODD, Justices, being both opposed to it. Since the last-mentioned case, which was decided in 1829, the question does not seem to have been considered an open one (Gest *v.* Espy, 2 *Watts* 268 ; Parke *v.* Smith, 4 *W. & Ser.* 289 ; Gilpin *v.* Howell, 5 *Barr* 51 ; Bank *v.* Fordyce, 9 *Barr* 276 ; Wilt *v.* Snyder, 5 *Harris* 77).

It must be remembered that the rule, as understood in this state, is confined strictly to negotiable instruments, and does not apply even to them unless they have been actually negotiated, and that in the regular course of business, previous to their maturity (5 *Harris* 77). The note before us appears on its face to have been so negotiated, and the offer is to prove that it was not by a witness whose name is on the back of it, and then to establish by the same witness certain facts which made it worthless at the time he transferred it to the plaintiff. But he cannot be received for that purpose. The transaction, as it stands, presents an apparently well founded objection to his competency, which he cannot remove by his own oath. If he is *primâ facie* within the rule that forbids him to invalidate an instrument which he has passed to an innocent holder, he cannot swear himself out of it by testifying that the holder is *not* innocent. If evidence of any irregularity in the transfer had been given *aliunde*, then the way would have been open to prove the other facts by an endorser of the instrument as ,well as by another.

We are not insensible to the reasons urged against this rule in the argument of the counsel for the plaintiff in error. The force of Judge HUSTON's dissenting opinion in Griffith *v.* Reford is also felt, and the strong attack upon the whole doctrine contained in Mr. Hare's note to Bent *v.* Baker (2 *Smith's Lead. C.* 57), is fully appreciated. But how are we to set ourselves against an unbroken current of decisions which have lasted for half a century, and which have been concurred in generally by all the judges without a murmur of dissent? The authority of our predecessors ever since the revolution, constantly repeated, at intervals of five or six years, is not very easily set aside, even though the rule it establishes was not, in our opinion, quite so well founded in principle, convenience, or policy as they believed it to be.

It is not necessary to decide what would have been the effect of the evidence if it had been given. It was offered to prove that the note had no validity at the time of the transfer. In assuming that it was sufficient for that purpose we but take the plaintiff in error at his word. But, having proposed to show it by an incompetent witness, it was rightly rejected, whether it would have been admissible through another medium or not.

Judgment affirmed.