Mr. Justice WAYNE
 

 delivered the opinion of the court.
 

 The only question arising on this record is, whether the court erred in so much of the charge to the jury as is set out in the bill of exceptions. Objections were taken in the course of the trial to testimony, but no exceptions were taken to the rulings of the court upon them. The declaration in the case contained two counts — one of them alleging that a contract had been made between the City Bank of Columbus and the United States, by which the bank agreed, on the 1st November, 1856, to.transfer one hundred thousand dollars of the public money from New York to New Orleans by the first of Januaiy, 1851, free of. change; and the other account for money had and received by the bank for the use of the United States.
 

 The charge given by the court was confined to the first count. ■The bill-of exceptions sets but the following evidence, which was introduced by the United States to show a .contract with the bank.
 

 The following letter was written by the cashier of the bank:
 

 City Bank, op Columbus,
 

 ■ Columbus, Ohio, 26th October,
 
 1850.
 

 Sir; The bearer, Colonel William Miner; a director of this bank, is authorized, on behalf of this institution, to make proposals for the. purchase of United States stocks to the amount of one hundred thousand.dollars. He is also authorized, if consistent with the rules' of the Treasury Department, to contract, on behalf of this institution, for the transfer of money from the East to the South or West, for the Government.
 

 X have the honor to be, sir, your obedient servant,
 

 THOMAS MOQDIE,
 
 Cashier.
 

 Hon. Thomas Corwin,.
 

 Secretary of the Treasury, Washington City.
 

 This letter was presented by Mr. Miner to Mr., Corwin on the first of November, 1850. On the same day, Mr. Cbrwin wrote to Mr. Minbr the following letter;
 

 
 *361
 
 Treasury Department,
 
 November %
 
 1850.
 

 Sir: Your proposition of this date, to' transfer $100,000 from New York or Philadelphia to New Orleans, hy the 1st January next, free of charge to the Department, is accepted. You will receive herewith a transfer draft on the Assistant Treasurer at New York, in favor of the Assistant Treasurer at New Orleans, for $100,000, with the authority endorsed to • make the payment at New York to you.
 

 I am, very respectfully,
 

 THOMAS COR,WIN,
 
 Secretary.
 
 '
 

 This was followed by an undertaking for the transfer of one hundred thousand dollars for the Government from New York to New Orleans:
 

 Washington City,
 
 November
 
 1, 1850.
 

 This will certify that-1 have contracted with the United States Treasury,.as the agent of the City Bank of Columbus, to transfer $100,000 from New York to New Orleans, to be deposited in the Treasury at the latter-named city by'the first day of January, 1851, free of charge. I have, in pursuance of said contract, this day received a draft in my own hand for one' hundred thousand dollars on the United States Treasury at New York city, which is to be accounted for in said contract.:
 

 . WILLIAM MINER.
 

 • Miner received the draft,, and cashed it in person on the 2d November, 1850 ; but what he did with it no one knows, or this record does not-show; It is certain that it Avas not repaid in New Orleans according to the contract; and there are no proofs on this record which can raise a presumption that the. Bank of Columbus ever-received a dollar, of it. There is proof thát'Miner was all that time a director of the bank, and that Moodie, who gave him the letter to the Secretary of the Treasury; was the cashier, and that he signed his name to the letter as cashier; and that the letter had been copied into the letter book of the bank. A by-law of the bank was also fut in proof, to show that it might be inferred from it that he had authority, as cashier, to empower Mr. Miner, ás a director of
 
 *362
 
 the hank, to enter into such a contract as he had made with the Secretary of the Treasury. . The by-law is: “ A committee of-two shall be appointed every six months to advise with the president and cashier. In their absence, all the ordinary business of the bank may be' done by the president and cashier; and if either of them be not. present, then by the other alone; but any discount, negotiation, or contract, whether made by the board or committee, is to be done by the consent, of all present.”
 

 ■ It was also shown that there had not been a meeting of the directors in either July or August, 1850. That there had been a meeting on the 21st September, 1850; and another No.vember-4th, 1850, nine days before the cashier gave his letter to Miner, and three days after the date of Miner’s conti act, to transfer the money from'New York to New .Orleans. The ■ : minutes of the bank, as kept by the cashier, of the meetings of the directors, do not show any intention upon the part of. the directors to enter into a contract for the purpose of buying stock of the United States, or for the transmission of the money .of the Un-ited States from the East to the. South or'West, as Moo.die expresses it 'in his letter; or that after the negotiation of Miner, and his receiving the money from the Assistant Treasurer in New York, that the directors or president of the bank had any knowledge of the transaction' until after Miner’s default to pay the amount at New Orleans. Moodie testifies that he wrote the letter of the 26th of October, 1850, for Miner. to negotiate with, the Secretary of the Treasury, without the knowledge of the-president'or any of the directors of the bank, except Miner himself, and that the fact that such a letter had been written was not communicated by him to any of the directors until January after, though he had caused a copy of it to be'put in the letter book. All of the directors, at the time of the transaction, have sworn that Moodie had not been authorized by the board or by any of themselves to constitute Miner such agent; that they-had no knowledge of Mood.ie’s letter, and that they never sanctioned the same. And there is other testimony in the cáse, that Moodie, as cashier, had not the power to depute Miner for any such purpose, and that it
 
 *363
 
 would not have been done but by a resolution of the board of directors. Upon this evidence, and some other which it is not material to notice, the court charged the jury. After they had retired, 'and consulted for some time, they came into court and asked for further instructions, and the court gave them' the following charge in reference to the contract set out in the -first.count of the declaration: “That'if they should find that -the letter written by Moodie was his own act, and, had been-given without the knowledge or authority of the board- of directors, or any of them individually, except Miner, and that the agency of Minér was. not constituted by or known to the board of directors, or the directors individually, or any of them except Miner, but was the act of the cashier alone; and if they should find that Moodie had n.o power as cashier, except such as belonged to the office -of cashier generally, or such as are given by the charter or by the by-law or other law. or usage of the said bank, that the defendant was not concluded by that letter, and is not bound by the contract made by Miner, without some subsequent ratification of the same, though the Secretary had, in contracting with Miner; relied upon it as the-act of the-bank.”
 

 To this charge the plaintiff excepted, and, on account of that exception alone, the case has been brought to this court by.writ of error. In our opinion, no charge could have been more comprehensive of the merits of the case, more precise .in - its application to the particulars of the testimony introduced by the plaintiff and the defendant, or more expressive of what the law is upon such a state of facts. It is all that the litigants could have expected, and is liberal to both. It is also in coincidence. with the views generally entertained of the powers and duties of the cashiers of banks, by those most familiar with the management and business of banks, and perfectly so with such as have been expressed by this court in previous reported cases. In Fleckner
 
 v.
 
 The Bank of the United States, (8 Wheat., 338, 356, 357,) this court said, the charter authorizes the president and directors to appoint a cashier and other officers of the bank, and gives the president and directors, or a majority of them, full power and. authority to make all such rules and reg
 
 *364
 
 ulations for the government of the affairs and conducting the . business of said bank, as shall not be contrary to .the act of / incorporation. It contains no regulations as to the- duties of cashiers; with the directors it would rest to fix the duties of. . cashier or other officers: Whether they have made any regulation upon this subject, does not appear; but the acts of the cashier, doné in the ordinary course of the business actually confided to such an officer, may well be deemed
 
 prima fade
 
 evidence that they fell within the scope of his .duty. In the case Bank of the United States
 
 v.
 
 Bunn, (6 Peters, 51,) the court would not permit the president and cashier of the bank to bind it-by their agreement with.the endorser of a promissory note, that he should not be liable on his endorsement. It said it is not the duty of the cashier and president to make such contracts, nor have they power to bind the bank, except in the discharge of their ordinary duties. All discounts are made under the authority of the directors, and it is for them to fix any conditions which they may think proper in loaning money. The court defines the cashier of the bank to be an executive'officer, by whom-its debts are received and paid, and its securities .taken and transferred, and that his acts, to. be binding upon a bank, must be done within the ordinary course of his duties. His ordinary duties áre to keep all the funds of the bánk, its notes, bills, and other choses in action, to be used from time to time for the ordinary and extraordinary exigencies of the bank. He usually receives directly, or through .the. subordinate officers of the bank,, all moneys and notes of the bank, delivers' up all discounted notes and other securities when they have been paid, draws checks to withdraw the funds of the bank where they have been deposited, and, as the executive officer of the bank, transácts most of its business.
 

 The term ordinary business, with direct reference to the duties of cashiers of banks, occurs frequently in English cases, and in.the reports of the decisions of our State courts, and in ho one of them has it been judicially allowed to comprehend a contract made by a cashier, without an. express delegation - of power from á board of directors to do so,, which involves the payment of money, unless it be such as has been loaned in the
 
 *365
 
 usual and customary way. Nor has it ever been decided that a cashier could purchase or sell the property, or create an agency of any kind for a bank which he had not been authorized to make by those to whom has been confided the power to manage its business, both ordinary and extraordinary. The case of Kirk
 
 v.
 
 Bell, (12 English and Common-Law Reports, 389,) and that of Hoyt
 
 v.
 
 Thompson, were very appropriately cited by the counsel of the appellee, in this connection; and we think the safe rule in all instances of acts done by the officers of corporate companies, or by those who have the management of their business, from which contracts are alleged to have been made, is, to test that fact by an inquiry into the corporate ability which has been given to them and to their subordinate officers, or which the directors of the company can confer upon the latter to act for them. Such was the view of this court when it decided, in the case of the Bank of the United States
 
 v.
 
 Dunn, (6 Peters,) that a release given by its president and cashier to the endorser of a promissory note’of his liability upon it, did not bind the bank, neither nor both having any authority to make contracts of that kind. The case before us is one in which a cashier acts alone, and iti. which he testifies that he did so without any consultation with the president or directors of the company, and of which they had no' information from him of the transaction until after the failure of Miner to pay the money in New Orleans. The act under which the City Bank of Columbus became a corporation does not, in any part of it, 'give any power to a cashier to act independently of the directors. No specific power is given to the directors "to appoint a cashier. In the general power given to the directors to appoint officers to do the ordinary business of the bank,- they have an authority to appoint a cashier, and such an appointment is a limitation of that officer’s executive function- in doing the business of the bank. It cannot be pretended that the directors, as a whole, or any one of them, except Miner, consented to the cashier’s designation of Miner for any such purpose as was concluded between them, to induce the Secretary to believe that Miner was the agent of the bank, either to buy stock of the United States or to enter into
 
 *366
 
 contracts for the transmission of money, free of charge, to ■ those posts where the United States should-designate-it to be put. Such a power in the • Secretary of. the Treasury is a •necessary one for the transaction of the business' of the Govern-ment, pervading, as it does, every part of the country. -The exercise of it, however, requires great care and caution in the selection of agents for such a purpose,, and no authority short ' of the most certain should be taken to establish'the representative character of any one for a private company or corporation to enter into such a contract with-the Secretary.
 

 Thé United States, a3 plaintiff in this action, has failed to establish the contract which it" alleges iii its declaration had been made with the City Bank of Columbus, for the transmission of money; and ive direct the judgment given in the court below to be affirmed.