## CARPENTER v. FERRIS NAT. BANK et al.

### No. 11196.

Court of Civil Appeals of Texas. Dallas.
April 8, 1933.

Rehearing Denied May 13, 1933.

Renfro, Ledbetter & McCombs, of Dallas, for appellant.

McBride, O'Donnell & Hamilton, of Dallas, for appellees.

LOONEY, Justice.

T. B. Cates was indebted to Ferris National Bank of Ferris, Tex., in the sum of $4,-959.35, evidenced by notes secured by a mortgage on certain teams, a tractor, other agricultural tools and implements, and certain feedstuff. This indebtedness being past due, on December 4, 1928, the directors of the bank, by an order entered upon its minutes, instructed the cashier, Lloyd Wilson, to realize on the collaterals, by foreclosure, and charge off the indebtedness remaining.

Instead of complying with these instructions, the cashier took a transfer from Cates to the bank of the mortgaged personal property, and a conveyance from Cates and wife to the bank of 40 acres of land, described in appellant's petition, the consideration recited being the cancellation of all indebtedness owing the bank by Cates and the payment, by assumption, of five certain vendor lien notes for the sum of $320 each, bearing interest at the rate of 8 per cent. and payable to and held by M. A. Carpenter, the 40-acre tract of land having been conveyed by M. A. Carpenter and wife to Cates, on August 24, 1927, for the recited consideration of $1 and the five lien notes above mentioned.

The cashier made no report of his doings, although regular meetings were held, but the directors indirectly learned, six or eight months later, that he had in possession the mules formerly under mortgage. The chairman of the board, Dr. Hampton, testified in effect that the cashier made no report to the board of the transfer of personal property, or of the conveyance containing the assumption clause; that fact was never mentioned in any of the board meetings prior to the time the affairs of the Ferris National Bank were taken over by the Farmers' & Merchants' State Bank of Ferris (mentioned later); that some five or six months after the conveyance witness learned that 40 acres of land were being carried on the books of the bank, and, in reply to a question, the cashier said that: "It is 40 acres of land I took over from Mr. Cates down in the bottoms," and that the land was clear of indebtedness; that witness did not know the land was incumbered, or of the attempt of the cashier to bind the bank by the assumption to pay same, until after the absorption of the bank by the Farmers' & Merchants' State Bank; that the board of directors always retained its authority, under the law, to direct and manage the bank, and never surrendered same to the cashier; that the bank did not pay taxes on the property for 1929; no such items appear on its expense account.

J. H. Orr, another director, gave similar testimony, saying, among other things, that the board of directors, having no knowledge of the claimed assumption of the Carpenter notes, took no action with reference to the ratification of the act of the cashier; two other directors gave testimony of similar import, and the same stands uncontradicted.

On November 17, 1930, the Ferris National Bank was absorbed by Farmers' & Merchants' State Bank of Ferris, the latter assuming the payment of all liabilities of the former, shown of record at the close of business, November 17, 1930, as disclosed by its ledger or any other formal record of the bank, including liabilities to depositors and other creditors, excluding liability to shareholders, and all liabilities not of record thereafter found, arising either by contract or tort.

In this connection, it is pertinent to state that the alleged assumption agreement upon which Carpenter seeks to hold defendants liable was not disclosed by the ledger or any record kept by the bank.

The Ferris National Bank, having been absorbed by the Farmers' & Merchants' State Bank of Ferris, went into voluntary liquidation on January 28, 1931.

M. A. Carpenter instituted this suit to recover the amount due on the five lien notes mentioned, and to foreclose on the 40-acre tract of land, against Cates, maker, the Fer-

ris National Bank on the assumption clause in the conveyance from Cates to the bank, against the Farmers' & Merchants' State Bank on its alleged assumption of the indebtedness of the Ferris National, and against individual directors of the Ferris National, on the idea that they were trustees of the funds of the bank then in liquidation.

The case was tried without a jury, resulting in judgment against plaintiff, and for all defendants, except Cates, against whom judgment was rendered in favor of plaintiff for the amount due upon the notes, with foreclosure on the land. Carpenter appealed.

The court filed findings of fact, embracing the salient facts stated above, and specifically found: That the cashier of the Ferris National Bank, in taking a transfer of the personal property and conveyance of the land, from Cates to the bank, containing the assumption agreement, violated instructions given him by the board of directors on December 4, 1928; that the cashier failed to report these facts to the board of directors, and no member of the board had any knowledge of the real transactions, until after the Ferris National Bank had gone into liquidation; that the cashier deceived and misled the board of directors, stating to the chairman of the board, about six months subsequent to the transactions, that he himself had taken over the land, but, subsequent to the absorption agreement between the banks, the cashier represented to the chairman of the board of directors that the land had been conveyed to the Ferris National free of any indebtedness; that no other members of the board had any information in regard to the conveyance from Cates to the Ferris National, until after the assets of the bank were taken over by the Farmers' & Merchants' State Bank; that appellant, Carpenter, did not change his position in any respect with reference to the land or the indebtedness owing thereon, by reason of the execution of the deed from Cates; that his security remained the same; and that the Ferris National received no fruits or benefits from the purported conveyance; that Farmers' & Merchants' State Bank had no knowledge of the existence of the purported deed from Cates to the Ferris National Bank at the time it took over the assets and assumed certain of the liabilities of the Ferris National; and that the books and formal records of the latter did not reveal the existence of the assumption agreement.

The court's conclusions of law are to the effect that the act of Lloyd Wilson, cashier, in accepting the deed from Cates, obligating the bank to pay by assuming payment of the Carpenter notes, was in violation of instructions embraced in the formal resolution of the directors, and beyond the scope of his authority; that his conduct in accepting the deed, and thereafter concealing the truth from the board of directors, coupled with misrepresentations made to members of the board, constituted a fraud upon the bank, perpetrated for the benefit of appellant, Carpenter; that, since the evidence disclosed that the directors of the Ferris National Bank had no knowledge of the real transaction, until after the dissolution of the bank, and not being charged with a duty to investigate, Ferris National and its directors were not estopped to deny liability for the wrongful acts of the cashier, nor held to have acquiesced in or ratified his acts; that under the facts and circumstances the deed from Cates to the bank was never accepted, passed no title to the bank, nor did it become a binding obligation; that the Farmers' & Merchants' State Bank, having no knowledge of the transaction, the books and records of the Ferris National disclosing nothing as to the existence of the conveyance from Cates, did not assume nor did it become liable to pay the notes sued upon. The findings of the trial judge are sustained by evidence, and are adopted as our conclusions on the issues; also his conclusions of law are adopted.

The record suggests no theory entitling plaintiff to recover against the Farmers' & Merchants' State Bank, or the directors of the Ferris National; hence no further notice will be given their connection with the case.

The only question presented for decision is, Did the act of Cashier Wilson, in accepting the conveyance from Cates to the bank, containing the assumption clause, obligate the bank to pay the Carpenter notes?

It is obvious that the cashier disregarded in toto the instructions given him by the board of directors in regard to the Cates indebtedness; however that may be, the only phase of his conduct, to be considered by us, relates to the binding quality of his act in having the bank assume payment of the Carpenter notes.

The affairs of national banks are placed by statute under the management of a board of directors (see U. S. Code, title 12, chap. 2, § 71, Banks and Banking [12 USCA § 71]), who are authorized to appoint a cashier and other officers and define their duties (see chapter 2, § 24 [12 USCA § 24]), and, unless enlarged by authority of the board of directors (which may be expressed or implied), the ordinary duties of a cashier, the exercise of which will prima facie be binding upon the bank, are stated in U. S. v. City Bank of Columbus, 21 How. 356, 364, 16 L. Ed. 130, 133 (quoting from Bank of U. S. v. Dunn, 6 Pet. 51, 8 L. Ed. 316), as follows: "In the case Bank of the United States v. Dunn, (6 Pet. 51 [8 L. Ed. 316],) the court would not permit the president

and cashier of the bank to bind it by their agreement with the endorser of a promissory note, that he should not be liable on his endorsement. It said it is not the duty of the cashier and president to make such contracts, nor have they power to bind the bank, except in the discharge of their ordinary duties. All discounts are made under the authority of the directors, and it is for them to fix any conditions which they may think proper in loaning money. The court defines the cashier of the bank to be an executive officer, by whom its debts are received and paid, and its securities taken and transferred, and that his acts, to be binding upon a bank, must be done within the ordinary course of his duties. His ordinary duties are to keep all the funds of the bank, its notes, bills, and other choses in action, to be used from time to time for the ordinary and extraordinary exigencies of the bank. He usually receives directly, or through the subordinate officers of the bank, all moneys and notes of the bank, delivers up all discounted notes and other securities when they have been paid, draws checks to withdraw the funds of the bank where they have been deposited, and, as the executive officer of the bank, transacts most of its business. The term ordinary business, with direct reference to the duties of cashiers of banks, occurs frequently in English cases, and in the reports of the decisions of our State courts, and in no one of them has it been judicially allowed to comprehend a contract made by a cashier, without an express delegation of power from a board of directors to do so, which involves the payment of money, unless it be such as has been loaned in the usual and customary way. Nor has it ever been decided that a cashier could purchase or sell the property, or create an agency of any kind for a bank which he had not been authorized to make by those to whom has been confided the power to manage its business, both ordinary and extraordinary."

■■ We think it necessarily follows that, neither the purchase of land by a cashier for the bank, although taken in satisfaction of debt previously contracted, nor the creation of an obligation to pay outstanding liens thereon, could be considered ordinary duties belonging to the cashier's position; therefore, for such acts of a cashier to be binding upon the bank, they must rest upon delegated authority from the board of directors. That the assumption by a grantee of the payment of a mortgage or lien indebtedness for which his grantor is personally liable creates a primary liability that may be sued upon by the holder and owner is well settled in this state. Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672; Brannin v. Richardson, 108 Tex. 112, 185 S. W. 562; Allen v. Traylor (Tex. Com. App.) 212 S. W. 945, 947.

■ In view of the limit placed upon the power of national banks to incur indebtedness, it may be seriously doubted whether even the board of directors, under the circumstances, could have obligated the bank to pay the Carpenter notes; for, while authority is given national banks to purchase real estate in satisfaction of debts previously contracted in the course of dealings (see U. S. Code, title 12, chap. 2, § 29, Banks and Banking [12 USCA § 29]), yet no express authority is given national banks to assume payment of existing liens upon real estate taken in satisfaction of a previous debt (see same title and chapter, § 82 [12 USCA § 82]). It may be true that, under certain circumstances, obligations, not specifically mentioned in the statute, may be incurred by national banks, yet a transaction of that nature is so out of the ordinary course of the bank's business that those who assert such an obligation must be able to show that the officer or agent acting for the bank had specific authority to create the obligation. In Western National Bank v. Armstrong, 152 U. S. 346, 14 S. Ct. 572, 574, 38 L. Ed. 472, the court said that the power to borrow money is not expressly given by statute to national banks; that their business is to lend and not borrow money; to discount notes of others and not get its own notes discounted; yet it was stated that, under the general authority to transact a banking business, all incidental powers may be exercised to carry on the business successfully, and that this necessarily implies the right of a bank to incur liabilities in the regular course of its business; and, in this connection, the court said: "Nor do we doubt that a bank, in certain circumstances, may become a temporary borrower of money; yet such transactions would be so much out of the course of ordinary and legitimate banking as to require those making the loan to see to it that the officer or agent acting for the bank had special authority to borrow money. Even, therefore, if it be conceded that it was within the power of the board of directors of the Fidelity National Bank to borrow $200,000 on time, it is yet obvious that the vice president, however general his powers, could not exercise such a power unless specially authorized so to do, and it is equally obvious that persons dealing with the bank are presumed to know the extent of the general powers of the officers."

■ In the instant case, no specific authority was conferred on the cashier to bind the bank on the assumption agreement; quite to the contrary, it is undisputed that the directors passed an order directing the cashier to realize upon the collaterals held as security for the Cates indebtedness, and charge off the remainder; this definite instruction forbids the idea that the cashier

was impliedly authorized to take a conveyance of land on the debt and obligate the bank to assume and pay the Carpenter notes.

Neither ratification by the Ferris National, of the unauthorized acts of its cashier, nor estoppel to repudiate same, is justified, because of the absence of any proof showing knowledge by the directors of the material facts regarding the assumption agreement. Citizens' National Bank v. Good Roads Gravel Co. (Tex. Civ. App.) 236 S. W. 153; Western National Bank v. Armstrong, 152 U. S. 352, 14 S. Ct. 572, 575, 38 L. Ed. 473. In Western National Bank v. Armstrong, supra, the court, speaking of a similar situation, said: "It is scarcely necessary to say that a ratification, to be efficacious, must be made by a party who had power to do the act in the first place,—that is, in the present case, the board of directors,—and that it must be made with knowledge of the material facts. There is not the slightest evidence shown in this record that the board of the Fidelity National Bank, by any act, formal or informal, undertook to ratify Harper's action in the premises, or that they ever had any knowledge of the transaction."

Appellant contends that his position is sustained by the decision of the Court of Civil Appeals in Desdemona v. Streety, 250 S. W. 286. The court found in that case that the active vice president (and manager), who represented the bank in transactions that resulted in an assumption agreement, acted within the general scope of his authority, and that the directors of the bank were fully aware of the transactions. This, of itself, differentiates that case from the case at bar, but, aside from this, it is shown by the concurring opinion of Justice Higgins that the decision turned largely on the construction of subdivision 9 of article 385 (now article 396) defining certain charter powers of state banks. Appellant also cites First National Bank v. Greenville Oil & Cotton Co., 24 Tex. Civ. App. 645, 60 S. W. 828, 829. A careful reading of this case shows that the decision was based upon the doctrine of estoppel; the court said that: "Under the facts as pleaded, defendant [bank] could not defeat a recovery by plaintiff [oil company] on the ground that the contract was ultra vires," and again the court said: "Where an officer of a corporation assumes to have power to bind the corporation, and enters into a contract for the corporation, and the corporation receives the fruits and benefits of the contract, and retains them with knowledge of the circumstances attending the making of the contract, it is estopped from rescinding or undoing the contract." The authorities cited by appellant do not, in our opinion, sustain his contention.

The judgment of the court below should be affirmed, and it is so ordered.

Affirmed.