# CHARLESTON.

BANK *v.* LOWTHER-KAUFMAN OIL & COAL CO. *et als.*

Submitted February 17, 1909.   Decided December 14, 1909.

1.  BILLS AND NOTES—*Joint Judgment.*

    A joint action may be maintained by the holder of a negotiable note and a joint judgment recovered against the maker and all the indorsers, if the note has been protested, or if protest and notice has been waived by the indorsers. (p. 507).

2.  BANKS AND BANKING—*Authority of Cashier—Liability of Indorsers.*

    A cashier has no authority, simply by virtue of his office, to bind his bank by an agreement made with the indorsers on a promissory note, and unknown to the directors, to the effect that each of said indorsers shall be liable only for a certain proportion of the debt; and it matters not whether such contract relates to original notes presented for discount, or to notes taken either in payment, or in renewal, of pre-existing notes. (p. 513).

66 W. Va.

★3.  SAME—*Notice to Directors—Effect on Bank.*

> Notice to one of the directors of a matter affecting the in-
> terest of the bank which it is to the interest of such director to
> conceal is not notice to the bank.   (p. 514).

4.  APPEAL AND ERROR—*Jury—Objections—Oath—Waiver—Presump-*
    *tions.*

> In a civil action, objection to the form of the oath adminis-
> tered to the jury to try the case can not be made, for the first
> time after verdict.  If the record shows that the jury were
> sworn, and the form of oath administered does not appear, this
> Court will presume that they were properly sworn.  (p. 515).

Error to Circuit Court, Wetzel County.

Action by the First National Bank of New Martinsville
against the Lowther-Kaufman Oil & Coal Company and others.
Judgment for plaintiff, and defendants F. W. Clark and J. I.
Norris bring error.

*Affirmed.*

*Thomas P. Jacobs* and *John M. Hamilton,* for plaintiffs in
error.

*F. L. Robinson, Hall & Hall,* and *Henry M. Russell,* for
defendant in error.

WILLIAMS, JUDGE:

Plaintiff brought an action of *assumpsit* in the circuit court
of Wetzel county against the Lowther-Kaufman Oil & Coal
Company, a corporation, the maker, and C. F. Lowther, W. R.
Fitch, J. I. Norris, Brent Shriver, F. W. Clark and J. W.
Kaufman, the indorsers of six several negotiable promissory
notes aggregatng, exclusive of interest, $28,000.00, and on the
23rd day of July, 1908, recovered a judgment for $29,195.34.
To this judgment F. W. Clark and Joseph I. Norris obtained
a writ of error from this Court.

The notes were endorsed for the accommodation of the
maker.  One of them was payable to the order of C. F. Low-
ther and indorsed by him and the others; another one was pay-
able to the order of Brent Shriver and indorsed by him and the
others; and the remaining four of said notes were payable to
all of the said defendants and were indorsed by them.  The
action was tried on November 2, 1907, upon a demurrer to the

defendants' evidence, and the jury found a verdict in favor of plaintiff for the amount above stated, subject to the action of the court upon the demurrer to the evidence. The court sustained the demurrer to the evidence and entered judgment upon the verdict.    There was also a demurrer to the declaration which the court overruled.

The first assignment of error relates to the action of the court in overruling the demurrer to the declaration.  It is insisted that the demurrer should have been sustained for the alleged reason that there is no authority in law for a joint action against the maker and the several indorsers of a negotiable note when the note has not been protested, and section 11, chapter 99, Code, is relied on.    This section provides that debt, or *assumpsit,* may be maintained and a joint judgment rendered against the maker and indorser of negotiable paper, "if the same be protested." The notes in the present case were not protested, but protest had been waived by the indorsers. The signatures of the endorsers appear under the following printed words on the backs of the notes which were on them at the time they were endorsed, viz: "Demand, Notice of Protest and Non-Payment Waived." It is contended that the statute above referred to was not intended to authorize a joint action against the maker and several endorsers of a note unless it has been formally protested. We hardly think so. The declaration alleges that the indorsers waived protest and notice. The statute is remedial and should be liberally construed. Protest and notice of dishonor is intended for the protection of the indorser, and it is a right which he can waive. By waiver he makes his liability just as absolute as if the paper indorsed by him had been formally protested, and his relation to the holder and all other indorsers becomes the same in every respect as in the case of protest. The object of the statute is to give the payee, or holder of the paper, a surer and quicker remedy to collect his money than he formerly had, which was by a proceeding against each indorser in the inverse order of their indorsement; and also to avoid a multiplicity of actions. It would, therefore, be extremely technical and unwarranted, we think, to give the statute the limited construction contended for. It would be contrary to the spirit of the statute. It

was, therefore, not error to overrule the demurrer to the declaration.

The next error relied on in brief of counsel is that the court erred in permitting the notes sued on to go as evidence to the jury. This involves the same question raised by the demurrer to the declaration; and, there being no error in overruling the demurrer, it necessarily follows that there is no error in admitting the notes in evidence because of want of protest. There is a written waiver on the notes.

The next error assigned relates to the rejection of the defense set up by special pleas filed by the two plaintiffs in error. The plea of *non-assumpsit* was also pleaded and issues were joined on these several pleas. The special pleas set up, as a defense, a certain written contract alleged to have been made between the several endorsers on the aforesaid notes, as directors and stockholders of the Lowther Oil Company, the predecessor in interest of the Lowther-Kaufman Oil & Coal Company, fixing and limiting their liability on account of their several indorsements, of which contract it is alleged plaintiff, through its cashier, had notice, and to the terms of which it agreed. The questions arising under these several special pleas will be considered along with the questions arising under the next assignment of error which relates to the action of the court in sustaining the demurrer to the defendants evidence.

The contract set up in the special pleas bears date the 7th day of November, 1901, and is made between C. F. Lowther, in his own right and as administrator of F. P. Lowther, deceased, and L. M. Merrill, F. W. Clark, W. R. Fitch, Joseph I. Norris, J. W. Kaufman and Brent Shriver. It recites that the parties named own all the stock in the Lowther Oil Company, a corporation, in the following proportions, viz: C. F. Lowther, 1-4; the Estate of F. P. Lowther, 1-4; L. M. Merrill, 1-16; F. W. Clark, 1-16: W. R. Fitch, 1-16; Joseph I. Norris, 1-16; J. W. Kaufman, 3-16 and Brent Shriver 1-16. It further recites that it may become necessary to borrow money, to execute new notes, and to renew notes already made in order to carry on the business of the company; that in regard to such indebtedness said parties are not willing to be bound further than in proportion to the amount of their stock held in said company. The contract then proceeds to authorize and empower the presi-

dent and secretary of said corporation to borrow money not exceeding $50,000.00, and also to renew any outstanding indebtedness, to execute the promissory note of said corporation for any loan of money, or in renewal of notes; and concludes with a guaranty for the payment of any such note in proportion to the stock owned by each, and provides, that "if in the negotiation of any such loan or renewal it becomes necessary for any of said stockholders to endorse or sign any such notes individually in order to satisfy the rules and regulations of the bank from which any such money is borrowed, the said stockholders shall be liable to said bank and to each other upon any such note or notes in proportion to their said stock in said corporation." This contract was signed by the Lowther Oil Company and by all of the above named parties, and below their signatures was the following memorandum or note, "The First National Bank of New Martinsville West Virginia, hereby takes notice of this contract and any money it may loan to said Lowther Oil Company will be loaned upon the terms therein set forth and agreed upon between the individual stockholders. FIRST NATIONAL BANK, By J. LEE HARNE, *Cash. Corporate Seal of First National Bank.*"

We have no doubt that such a contract, as between the parties to it, is lawful and enforcible, but it is claimed by defendant in error that it was not a party to the contract, and is not bound by it; that the cashier was not authorized to bind the bank by such a contract; that the directors never had any knowledge of it, and never ratified it. There is no evidence in the case that cashier Harne was authorized by the board of directors to make the agreement, nor does it appear that he ever presented it to them for ratification at any of their meetings. Mr. Harne says he does not know whether he presented it to the board of directors or not. He says "It may have been presented at a meeting and discussed, but I don't recollect positively." He also says that he does not know that he even called it to the attention of any of the officers of the bank. There is evidence, however, that Mr. C. F. Lowther, one of the indorsers, was also a director of the bank for the years 1903-4. But he, being a one-fourth owner of the stock of the Lowther Oil Company, is bound by the agreement for as large an amount as any other endorser, and is bound for four times as much as

either Norris or Clark, the plaintiffs in error, and would, therefore, be interested in withholding his informaton from the other bank directors. Consequently, the information which C. F. Lowther had could not be imputed to the directors, who act collectively, so as to bind the bank. 1 Morse on Banks and Banking, sections 112 and 136; 5 Cyc. 461, and numerous cases cited in note 22. No copy of the contract was deposited with the bank. Cashier Henry Koontz, who succeeded cashier Harne in July 1904, says that he examined the book containing the minutes of the various meetings held by the directors and that they contained no mention of the contract. Robert Morris, who was one of the directors of the bank ever since its organization and who lives in the Town of New Martinsville and attended most all of the directors' meetings, testifies that this contract was never called to his attention, and that he had no knowledge of it whatever. S. Bruce Hall, one of the stockholders of the bank and also its president until January, 1902, and afterwards a director from January, 1902, to January, 1903, testified that he had no knowledge of such a contract. Both he and Robert Morris, however, testified concerning a certain written contract which was prepared by said Hall and which, he says, occupied about a half a type written page, limiting the liability of the stockholders of the Lowther Oil Company upon their endorsement of one certain note of $5,000.00, but that this contract applied to no other note. There were a number of $5,000.00 notes given by the Lowther Oil Company that were endorsed by its directors, and the testimony of cashier Koontz shows that two of these $5,000.00 notes were paid in cash, or by check, in 1905; so that, it does not appear that either of the two $5,000.00 notes sued on is the one concerning which Mr. Hall prepared the contract. But Mr. Hall furthermore testifies that the bank was not a party to the contract prepared by him, and knew nothing of it. Mr. Harne, the cashier, also testifies that, "as a rule when any of the notes fell due he renewed them without referring the matter to the discount committee," and that he does not remember to have referred any of the renewal notes to the "discount committee, or having them pass on them." So that, allowing full faith and credit to all the defendants' evidence and considering all proper and reasonable inferences deducible from it, we

think it fails to prove either that cashier Harne was ever authorized by the directors of the bank to make the contract, or that they ever ratified it. The case turns then upon the following question of law, viz: Had the cashier power, by virtue of his office, to bind his bank by such a contract? We think he had not. It is a well settled principle of law that the cashier has no authority to bind his bank by acts done without authority, and beyond the scope of his duties and power. But this is too general. The question is, was the particular act in question beyond the scope of his authority? To determine whether, or not, a particular act of the cashier is beyond his power is often very perplexing, because it depends largely upon the custom and usage of the particular bank affected, and also upon usage prevailing in particular localities. Hence there is much apparent conflict in the decisions of the courts of the various states of the Union.

Assuming, as we must do from the proof, that cashier Harne had no express authority from the directors to surrender the notes which had the unqualified indorsements of the indorsers thereon, and to take in renewal thereof notes indorsed by the same persons, but under an agreement, separately made with them and not appearing on the notes, qualifying and limiting their several liabilities to a sum less than the full amount of the notes, it is clearly seen that he would thereby be surrendering some of the security of his bank. This he could not do without exceeding his powers. This would apply to all those notes in existence at the time the contract was made, and which were carried into any of the notes sued on, by renewals. But it appears that some of the notes sued on were taken either in payment, or renewal, of notes of the Lowther Oil Company which were discounted after the contract was made. Had the cashier power, by virtue of his office, to lend the bank's funds, or to discount bills and notes? If he had such power without consulting the board of directors, or the discount committee, then we do not doubt that he had the power to bind his bank by the contract, because the power to discount paper with the bank's funds would carry with it the power to pass upon the sufficiency of the security, and incidentally the power to make any contract affecting the security that the directors as a body could make. But it is not shown that the cashier is authorized by

the charter, or the by-laws, of the bank to make loans of the bank's funds. The evidence shows that it was the custom of the bank to have applications for original loans passed on by the discount committee before the paper was discounted, although cashier Harne testifies that, in some instances, he discounted paper without referring it to the directors or to the discount committee; but he does not claim that it was the usual custom or practice for him to do so, neither does he say that he was ever authorized to do so.    Witness Hall testifies that he had frequent controversies with the cashier growing out of his unwarranted assumption of authority, and that he finally refused to serve as a director on account of it. We think the evidence is insufficient to prove the authority of the cashier to make loans of the bank's funds, as a rule or custom of the bank.

In *Bank of United States* v. *Dunn,* 6 Peters 51, it was held that it is not within the duty of the cashier and the president of the bank, and that they had no power to bind the bank by a contract with an endorser on a promissory note that he should not be liable upon his endorsement. In *United States* v. *City Bank of Columbus,* 21 How. 356, the question was whether or not Moodie, the cashier of the bank, who had addressed a letter to the Secretary of the Treasury in which he stated that William Miner, one of the directors of the bank, and the bearer of the letter, was authorized to contract on behalf of the bank for the transfer of money from the East to the South or West for the government, had the authority thereby to bind his bank. In pursuance of this letter Miner received a draft from the Secretary of the Treasury drawn upon the Assistant Treasurer at New York in favor of the Assistant Treasurer at New Orleans for $100,000.00. Miner cashed the draft in person but did not turn the money over to the Assistant Treasurer at New Orleans, nor did it appear that the City Bank of Columbus had received any of the funds. In the trial of the action against the City Bank of Columbus, the following charge was given to the jury, and was upheld by the Supreme Court, viz: "That if they should find that the letter written by Moodie was his own act, and had been given without the knowledge or authority of the board of directors, or any of them individually, except Miner, and that the agency

of Miner was not constituted by or known to the board of directors, or the directors individually, or any of them, except Miner, but was the act of the cashier alone; and if they should find that Moodie had no power as cashier, except such as belonged to the office of cashier generally, or such as are given by the charter or by the by-law or other law or usage of the said bank, that the defendant was not concluded by that letter, and is not bound by the contract made by Miner, without some subsequent ratification of the same, though the Secretary had, in contracting with Miner, relied upon it as the act of the bank."

In our view this charge, or instruction, states correctly and comprehensively the principle applicable to the present case. It is true, as counsel for plaintiffs in error argues, that there is a presumption in favor of the regularity of the act done by the cashier, and that this presumption may be invoked by the party deceived by the cashier's conduct. But this is only a rebuttable presumption which, in the present case, is overthrown by the proof which shows that he was acting without authority and that his unauthorized act was not subsequently ratified by the directors. If the indorsers have been deceived by trusting too much to the authority of the cashier, they may properly be said to have voluntarily taken the risk in relying upon the cashier's assumption of power, and they must suffer the consequences resulting from their failure to make further inquiry into his authority; if they had made inquiry of the board of directors at the time the notes were renewed and the contract of limited indorsement was entered into, they would have found that the cashier had not been authorized to accept their qualified indorsements in renewal of paper which they had previously indorsed unqualifiedly, and that he was likewise without authority to make new loans upon such qualified indorsements. The stockholders of the bank should not be made to suffer because of the unwarranted assumption of power on the part of the cashier.

Counsel for plaintiffs in error relies upon the following cases from this Court: *Smith* v. *Lawson*, 18 W. Va. 212; *Bank* v. *Kimberlands,* 16, W. Va. 535; *Casey* v. *Hale,* 15 W. Va. 867; *Bank* v. *Manufacturing Co.,* 56 W. Va. 446. These cases do not govern, because there is no evidence in the present case,

as there was in those, that the act of the cashier was afterwards ratified by the board of directors, either expressly or by implication. To constitute an implied ratification the person, or body, affected by it, must have had knowledge of the act to be ratified; and, as before stated, there is no proof in the present case that the directors, or any of them, except C. F. Lowther, who would be interested in withholding the information from the directors, had any knowledge of the contract.

A number of decisions from the courts of other states are likewise relied on; but we deem it unnecessary to review them in this opinion, for the reason that almost all of them are distinguishable in some material respect from the present case, and for the further reason that we regard the principles announced by this Court in the cases of *Lamb* v. *Cecil,* 25 W. Va. 288 and *Bank* v. *Welzel,* 58 W. Va. 1, as determining this case. If the cashier had authority to accept a note in lieu of the bank's funds on such a qualified indorsement, we could see no reason why he would not also have authority to accept a note indorsed purely as matter of form, and under an agreement to release the indorser from all liability. The law confers no such power upon the cashier simply by virtue of his office. The stockholders of a bank entrust the lending of its money and the management of its affairs to a board of directors, and if the bank's charter does not authorize the cashier to lend its funds, he can derive his authority to do so only from the board of directors who must act collectively, and as a body, and who are not, individually, by virtue of their office, the several agents of the bank. 5 Cyc. 466; 1 Morse on Banks and Banking, section 124.

Finding, therefore, that the contract of limited indorsement set up by the special pleas does not bind the bank, it constitutes no valid defense to the plaintiffs' action. Consequently, it becomes unnecessary for us to decide whether, or not, the series of notes executed by the Lowther-Kaufman Oil & Coal Company were taken in payment of the notes held by the bank against the Lowther Oil Company, or were simply renewals of those notes.

For the reasons hereinbefore stated it was not error to refuse to permit witness Harne to answer the question, whether or not, F. W. Clark had refused to indorse notes of the Lowther

Oil Company until after the contract before mentioned was signed.

It is also assigned as error that J. W. Kaufman, one of the indorsers, was proceeded against as a non-resident, upon order of publication, and judgment rendered against him jointly with the other indorsers. But this is error affecting Kaufman only; it is a matter of which he alone has any right to complain; and is in nowise prejudicial to plaintiffs in error.

It is also alleged as error that the record does not show that the jury were sworn to try the issues joined. The record shows that on October 15, 1907, issues were joined on the general plea of *non-assumpsit* and also on several special pleas; that the jury were selected on that day and were "charged and cautioned as the law directs," and were adjourned, and the trial of the cause likewise adjourned until the 28th of October, 1907; that on the latter date an order was made in the cause which shows that the jury were "sworn, agreeable to their adjournment" on the 15th of October, 1907. We think this is sufficient to show that the jury were sworn to try the issues. The oath at this time could have been administered for no other purpose inasmuch as the jury had been previously elected to try the case. It is not necessary that the record should state the form of oath administered. *State* v. *Sutfin,* 22 W. Va. 771; *Sweeney* v. *Baker,* 13 W. Va. 158; *State* v. *Ice,* 34 W. Va. 244; *State* v. *Kellison,* 56 W. Va. 690 (47 S. E. 166). Furthermore, the record does not show that any objection was made, at the time, to the form of the oath, whatever the form was that was administered; and if there was really any defect in the form of the oath, plaintiffs in error waived it by failing to object. *State* v. *Ice, supra.*

"The term 'issue' is collective, and in a case where there were several issues it is sufficient merely to swear the jury to try 'the issue.' " 24 Cyc. 371; *White* v. *Clay,* 7 Leigh 68; *Mackey* v. *Fuqua,* 3 Call. 19; *Hatcher* v. *Fowler,* 1 Bibb. 337; *Bate* v. *Lewis,* 1 J. J. Marsh, 316; *Pointer* v. *Thompson,* 7 Hump. 532. It is too late to object to the form of oath after the verdict. Thompson & Merriam on Juries, section 286.

Finding no error in the record of which plaintiffs in error have any right to complain, the judgment of the lower court will be affirmed.                                    *Affirmed.*