### LOTT v. FARMERS' STATE BANK OF CLARENDON. (No. 2043.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 10, 1923.)

**1. Contracts ⟐1—Reliance on contract is not essential element to recover damages for breach.**

Reliance on a contract by a party thereto is not an element essential to recovery of damages for its breach by the other party.

**2. Trial ⟐252(12)—Charge denying recovery for breach of contract to lend money, if borrower could not secure cotton pickers at customary wage, held erroneous, in absence of evidence.**

Where defendant sought damages for breach of agreement to lend him money to harvest his cotton crop, a special charge that defendant could not recover unless he could have secured cotton pickers at the customary wage, *held* erroneous, where no evidence as to such matter was presented, especially as defendant's tenants were ultimately to bear the costs of harvesting the crop.

**3. Banks and banking ⟐178—Agreement for loan held valid, if vendor's lien notes securing loan were commercial or business paper within statute.**

Agreement with a bank for a loan was not subject to the charge of illegality as exceeding limit of loans to one person permitted by Rev. St. art. 539, if the vendor's lien notes, to be discounted by the bank were commercial or business paper within Vernon's Ann. Civ. St. Supp. 1918, art. 539.

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Banks and banking ⟜118—Party asserting agency of cashier has burden of proving it.**

Where defendant alleged the cashier of plaintiff's bank was its agent in a loan agreement with defendant, the general denial put that allegation in issue, and the burden was on defendant to establish the authority of the cashier, and, where he failed to show such authority, he did not establish his case.

**5. Banks and banking ⟜118—Evidence held to show cashier did not have authority to bind bank in loan agreement.**

Evidence *held* to show that plaintiff's cashier, in agreeing with defendant to loan him six months later a sum of money in excess of the bank's capitalization, did not have authority to bind the bank, in view of Rev. St. arts. 374, 377, 378, 538.

**6. Banks and banking ⟜108—Cashier's authority to handle ordinary loans held not to warrant agreement to make extraordinary loan six months later.**

If a cashier of a bank had authority to handle the ordinary loan business without refering each application to the board of directors, that authority would not warrant an extraordinary agreement to make a loan six months later of a sum in excess of bank's capital, in view of Rev. St. art. 377.

**7. Appeal and error ⟜909(5)—Appellate court not authorized to presume cashier had authority to make extraordinary loan agreement.**

The appellate court may not presume a cashier of a bank had authority to make an extraordinary agreement to loan money six months later, and in a sum exceeding the bank's capitalization.

**8. Appeal and error ⟜882(8)—Complaint of introduction of evidence overruled, when appellant introduced similar evidence.**

Proposition complaining of introduction of evidence will be overruled, when appellant had introduced evidence to the same effect.

**9. Appeal and error ⟜742(1)—Proposition involving independent consideration of record by appellate court for lack of reference not considered.**

Proposition will not be considered by the appellate court, when not followed by any statement or reference to the record that would enable the appellate court to consider it without an independent investigation of the record.

Appeal from District Court, Donley County; Henry S. Bishop, Judge.

Action by the Farmers' State Bank of Clarendon against H. Lott. Judgment for plaintiff, and defendant appeals. Affirmed.

Underwood & Jackson and Kimbrough & Kimbrough, all of Amarillo, for appellant.

Cole & Simpson, of Clarendon, for appellee.

BOYCE, J. The Farmers' State Bank of Clarendon brought this suit against H. Lott, to recover on certain notes executed by Lott and payable to the bank. The questions presented on appeal arose in the trial of the cross-action pleaded by Lott in the case, and we make only such statement in reference thereto as is necessary for the disposition of the questions presented.

Several different claims are presented in the cross-action. The principal one is a claim for damages for the breach by the bank of a contract to lend appellant a large sum of money during the fall of the year 1920. The cross-petitioner's allegations and proof, stated most generally, as to this phase of his cross-action, are to the effect that in March, 1920, the bank, acting through its cashier, agreed to extend to the cross-petitioner during the fall of 1920, a line of credit in the sum of $100,000; that this agreement was confirmed from time to time and finally it was agreed, about October 1st, that the amount of such loan would be the sum of $86,000; and the appellant testified, though this was not alleged, that he was to take the money on or before October 15th. The rate of interest, according to the pleading and proof of the cross-petitioner, was agreed upon. It does not appear, either by pleading or proof, that any time was fixed by the agreement for the maturity of these loans, except that they were to be short time loans, and were being made for the purpose of enabling the cross-petitioner to harvest and market his cotton crop. The damages alleged consisted in the loss of a part of such cotton crop because the lack of funds prevented the cross-petitioner from harvesting the crop in season.

The court submitted the case to the jury on general and special charges, which included as elements requisite to recovery by Lott on this cause of action the following: (1) The making of the agreement by the bank and the reciprocal agreement on Lott's part to take the money; (2) the authority of the bank's cashier to make the agreement; (3) the reliance by Lott on the agreement; (4) its breach by the bank and the resultant damages; (5) by special charge the jury was informed that Lott could not recover unless the jury should find that he could have secured pickers for his cotton, "at the customary wage, and thereby have saved his cotton from loss and waste."

[1, 2] Without discussing the appellant's propositions at length, we will say that we are of the opinion that, unless the judgment of the trial court can be affirmed on the ground that the bank was entitled, under the evidence, to a peremptory instruction, the judgment must be reversed on account of errors committed by the court in submitting the questions referred to in the third and fifth subdivisions of our summary of the court's charge, as above stated. "Reliance" on a contract by a party thereto is not an

element essential to recovery of damages for its breach by the other party. The court must have confused the law of contracts with that of deceit growing out of false representations. The court not only submitted such an issue in its general charge but emphasized it by giving a special charge thereon. That part of the special charge which informed the jury that appellant could not recover unless the jury should find that he could have secured cotton pickers to gather his cotton at the "customary wage" was also, in our opinion, error. There was no evidence as to such matter at all. Besides, appellant's tenants were to ultimately bear the costs of harvesting the cotton; appellant was arranging to assist them temporarily in such matters.

[3] But the appellee insists that the pleading and evidence conclusively show that the agreement for the loan was illegal, as being in violation of the provisions of article 539, Revised Statutes, fixing a limit on the amount which a state bank is permitted to loan to any one person. We have been in some doubt as to this matter, though we are inclined to think that this contention should be sustained. The capital stock of the bank, which was a banking corporation created under the laws of the state of Texas, was $50,-000. Appellant had been a director in the bank and the limit of its loaning capacity to him was understood and was a matter of discussion between him and the bank's cashier. Excerpts from the pleading and evidence may be found from which it might appear that the agreement as made did not contemplate a violation of the law in its consummation. From these it would appear that appellant, Lott, was to have a line of credit of the stated amount; that as he got the money he was to give his notes therefor, secured by cotton receipts, by which the parties may have meant warehouse receipts of the character referred to in article 539, Revised Civil Statutes, and if he did not have cotton receipts sufficient to cover the full amount of the agreed loan, the balance was to be advanced on discount by the bank of certain vendors' lien notes owned by the appellant. · If these vendors' lien notes were "commercial or business paper" within the meaning of the language used in article 539, Vernon's Civil Statutes 1918, Supp., these allegations and supporting testimony would set forth an agreement not subject to the charge of illegality made against it. From other parts of the pleading and particularly the evidence it would appear that it was understood that the consummation of the agreement would involve the violation of the law. At several places in his testimony the appellant testified that it was understood that he was to execute demand notes in blank, leaving them in the bank; that he was to be permitted to overdraw his account, and that if the bank examiner came in the bank could then fill in and use the notes signed by him to keep the overdraft from appearing to the examiner; that most of the notes given by him would be demand notes. It seems rather clear that the matter could not have been handled in this way without a violation of the law, because appellant would not have had, by October 15th, anything like enough warehouse receipts to justify the lending of the amount of money which he said he was to get at that time. It appears also that, in so far as the contract was being carried out, it was being consummated in violation of the law. Appellant testified that before he was finally turned down he had borrowed something like $37,000 from the bank; that he and the cashier, in order to keep it from appearing that he had borrowed in excess of the limit, had his brother sign a note for $5,000 for money borrowed by appellant; also that he had arranged to borrow $9,200 to pay for hail insurance under an arrangement with the bank's cashier by which he was to give his note to the insurance agent for that amount, whereupon the bank would then take the agent's note, secured by appellant's note as collateral; but appellant's note was not to appear on the books so as to be figured in on the loan limit.

The appellee also contends that the contract was not binding because of uncertainty of the agreement as to the time for which the proposed loans were to run; and if any time was fixed, either by agreement or by implication, the agreement was for a demand loan, the breach of which would not entitle appellant to recover the damages claimed. We have reached no definite conclusion as to this matter.

[4, 5] But, in any event, we think the cross-petitioner failed to make out his case in that he failed to show that the cashier had authority to bind the bank by such agreement; and furthermore the record, in our opinion, warrants an affirmative holding that the cashier did not have such authority. The burden was on the cross-petitioner to establish the authority of the cashier, as alleged by him (Stember v. Keene [Tex. Civ. App.] 152 S. W. 661), and the general denial put this allegation in issue (2 C. J. p. 912, § 626). The board of directors is required by law to manage the business of the bank (R. S. art. 374), and make its investments (R. S. art. 538), and the law provides that the board shall meet at least once per month and pass upon the business of the bank and approve or disapprove each loan (article 378, R. S.). The record shows that it was the custom of the board of directors of this bank to meet at least once per month and to attend to the bank's business in compliance with these provisions of the law. There is no testimony that the cashier's agreement to make this loan (the cashier himself denies having

made it) was ever approved by the board; in fact it is evident that it was not. The president, who was an active officer in the bank, to appellant's knowledge took the position that the bank could not handle appellant's business because he wanted too much money and at one time, while the agreement was in force, according to appellant's testimony, flatly refused to increase appellant's then existing indebtedness to the bank by making him an additional loan. The cashier, according to appellant's testimony, later informed the appellant that he (the cashier) was running the bank and would see that the agreement was carried out. The record is silent as to just what authority the directors had conferred upon the cashier in the matter of making loans without prior consultation with the board.

[6, 7] If the cashier had authority to handle the ordinary loan business of the bank without first referring each application to the board. and this would be the most that could be inferred from the record in appellant's favor, this authority would not warrant the making of such an extraordinary agreement as this, which involved a sum of money largely in excess of the capital of the bank, and was originally made, according to appellant's contention, more than six months before the loan was to be made. Bank of U. S. v. Dunn, 31 U. S. (6 Pet.) 51, 8 L. Ed. 316; Swindell & Co. v. Bainbridge State Bank, 3 Ga. App. 364, 60 S. E. 15; First National Bank v. Lowther-Kaufman Oil Co., 66 W. Va. 505, 66 S. E. 713, 28 L. R. A. (N. S.) 511; Mutual Trust Co. v. Stern, 235 Pa. 202, 83 Atl. 615. Such an agreement would practically deprive the directors of the power tô manage the business of the bank and conduct its business in accordance with law. See article 377, R. C. S. We can indulge no presumption in favor of the cashier's authority to make such an agreement.

[8, 9] The foregoing conclusion renders it unnecessary to consider specifically any of appellant's propositions except the third and sixth. These two propositions are based on proceedings had in the trial of another claim set up by appellant in his cross-action, to wit, a claim for damages on account of the refusal of the bank to deliver to appellant certain warehouse certificates of the weights and grades of cotton held by the warehouseman and deposited by the appellant with the bank for safe-keeping. The third proposition relates to the introduction of evidence, and is overruled because the appellant had himself, on cross-examination of the witness Swift, introduced evidence to the same effect. The sixth proposition is not considered because it is not followed by any statement or reference to the record that would enable us to consider it without an independent investigation of the record.

The judgment of the trial court is affirmed.