## ALLEN v. MASSEY–HARRIS CO.

### No. 4499.

Court of Civil Appeals of Texas. Amarillo.

Nov. 18, 1935.

H. D. Payne, of Floydada, for appellant.

Monning & Akin, of Amarillo, for appellee.

MARTIN, Justice.

Appellee sued appellant on a note and to foreclose its mortgage lien on a combine.

To appellee's petition, appellant filed a lengthy answer and cross-action, setting out in great detail certain representations and items of damage. The gist of his defense is found in the following paragraph of said answer: "That said agent (Mr. Thompson) in response to said statement of the defendant, assured the defendant that in the future that an adequate store of supplies for repairs for the said combine would be maintained at Plainview, Texas, and at that time before the trade, that in fact there was one there then, and that if he bought he rest assured there would be one there at all future times for repairs for the Massey Harris people were coming into the territory there to stay." The substance and effect of his allegations as a whole were that appellant refused to buy a combine until the promise last quoted was made by appellee's agent, that he relied on same, gave the note in question, and such promise was breached.

The appellee presented several demurrers to appellant's answer and cross-action, but we regard the one presently discussed as sufficiently disposing of the entire case, and do not lengthen this opinion by a discussion of other apparently sound exceptions urged by appellee.

The appellant was given the opportunity, but declined to amend, after the trial court sustained appellee's general demurrer to said answer and cross-action. Thereupon the trial court entered judgment for appellee as prayed for.

■ Appellee urges here the following counter proposition: "The alleged representations of plaintiff's alleged dealer and collector to the effect that plaintiff would maintain a complete line of parts in Plainview at all future times, * * * being representations concerning the future business policies of plaintiff corporation, which under the law are subject only to the action of plaintiff corporation's board of directors and are not determined by its dealers or collectors, and there being no allegations that said agents had actual or apparent authority to make such representations or that plaintiff corporation ever authorized, knew about, or ratified same, or is estopped to deny same, such alleged representations do not constitute actionable fraud or binding warranties and no defense or cause of action was properly predicated upon same, so that plaintiff's general demurrer to defendant's answer and cross action based entirely thereon was properly sustained." We sustain this contention.

■ Appellant was a corporation. By article 1327 the general management of its affairs all rested in a board of directors. This law appellee was presumed to know. The statement quoted relates to matters entirely outside the scope of even the apparent authority of a mere sales agent for a corporation. To illustrate an extreme case: Suppose the promise had been that appellee would establish on appellant's land a million-dollar factory for the manufacture of parts for combines, so that same would be immediately available to appellant. Could appellant sue appellee, alleging such promise and its breach and as damages the difference in the value of his land with and without such factory, or other damages as loss of custom cutting, which he did in the present case? Would appellee be bound to spend the million dollars, or else pay him such damages? Could a salesman for a Ford car bind Henry Ford to install either a factory or store for parts, near the purchaser of such car? If so, by the same reasoning, could he bind him to move his factory to Texas from Detroit, as an inducement to effect the sale of an automobile? These questions answer themselves. Their exaggeration of facts serve to illustrate the reason for and necessity of the rule here announced.

An agreement not essentially different in principle from the present one was made the basis of a suit for damages by one James Logue against the Kansas Railway Company of Texas. Logue proved an agreement by the company's president to permanently maintain its road, depot, etc., at Washburn, and a breach of same. He secured judgment for a large amount, which was reversed and rendered. Southern Kansas R. Co. of Texas v. Logue (Tex.Civ.App.) 139 S.W. 11. Subsequently, the Supreme Court approved this holding. 106 Tex. 445, 167 S.W. 805. The opinion of Judge Brown is based largely on the reasoning of the case of Kansas City, M. & O. R. Co. v. City of Sweetwater, 104 Tex. 329, 137 S.W. 1117, 1118, 1120. We quote briefly from this case: "It will be observed that the statute places

all authority of the corporation in the board of directors, and the power of the officers of the company depends upon the action of the board of directors in conferring authority upon them. The fact that McCaulley was vice president of the railroad company did not authorize him to make the contract in question, that power could only be derived from the board of directors, yet we must keep in mind that it is not necessary that there should be express authority given, but whatever may be sufficient to justify the conclusion that the directors—that is, the authorized body of the railroad company—had conferred this authority upon McCaulley, or had, knowing of his having exercised it, approved or ratified it in any way would be sufficient." Appellant stands in this case upon the authority of Thompson as a sales agent to bind his principal. Nowhere does he allege any authority from the board of directors of appellee corporation to make such, or of a knowledge of and acquiesce in, or ratification by them, of the agreement to maintain a store for parts permanently in the town of Plainview.

Appellant's answer as a whole discloses that parts for the Massey-Harris combine were being sold at Plainview when said statements were made, but appellee discontinued such sales not long after appellant's purchase. Nowhere does appellant allege that he was unable to buy parts at some other conveniently accessible place, or that he was wholly unable to get parts at any place. His defense is based entirely upon appellee's failure to maintain permanently a store for parts at a particular location, as promised by its sales agent. It may be admitted that appellant's answer as a whole states a defense of partial failure of consideration, or one based upon fraud, if the sales agent had express or implied authority to make the promise relied upon. It may be further admitted that an ordinary sales agent for a combine might have apparent authority to bind his principal to furnish parts for a combine, since it would be practically worthless without these. This is not the present question. There is to our minds an obvious difference between the last-quoted promise, and the one being considered, which is to maintain a store for parts at all future times at a particular locality. In our opinion, the quoted statement related to a matter of business policy, the determination of which is vested exclusively in the board of directors under article 1327, supra, by necessary implication, which appellant presumptively knew and therefore could neither rely on nor make same the basis of a suit for damages, without in some way showing that such statement was or had become that of the corporation itself.

"Furthermore, in the case of transactions conducted by individual officers, those dealing with such officers are presumed to know that there can be no implied authority which is inconsistent with the control of corporate affairs exercisable by the board of directors, their right to control the corporation being a matter of public law and knowledge. It is therefore a presumption of law that a corporate officer has exceeded his authority where his act encroaches on the powers of the board of directors." 10 Tex.Jur. p. 974.

"If the cashier had authority to handle the ordinary loan business of the bank without first referring each application to the board, and this would be the most that could be inferred from the record in appellant's favor, this authority would not warrant the making of such an extraordinary agreement as this, which involved a sum of money largely in excess of the capital of the bank, and was originally made, according to appellant's contention, more than six months before the loan was to be made. Bank of United States v. Dunn, 31 U.S. [6 Pet.] 51, 8 L.Ed. 316; Swindell & Co. v. Bainbridge State Bank, 3 Ga. App. 364, 60 S.E. [13] 15; First National Bank v. Lowther-Kaufman Oil Co., 66 W.Va. 505, 66 S.E. 713, 28 L.R.A.(N.S.) 511; Mutual Trust Co. v. Stern, 235 Pa. 202, 83 A. [614] 615. Such an agreement would practically deprive the directors of the power to manage the business of the bank and conduct its business in accordance with law. See article 377, R.C.S.. We can indulge no presumption in favor of the cashier's authority to make such an agreement." Lott v. Farmers' State Bank (Tex.Civ.App.) 254 S.W. 1024, page 1027.

See, also, Williams & Miller Gin Co. v. Knutson et ux. (Tex.Civ.App.) 63 S.W. (2d) 576; Brand v. Eastland County Lumber Co. (Tex.Civ.App.) 77 S.W.(2d) 600; Rodgers v. First Nat. Bank, Paris (Tex. Civ.App.) 68 S.W.(2d) 371.

Judgment affirmed.